IN RE ESTATE OF EVA NELSON.
EVANGELICAL COVENANT HOSPITAL, APPELLEE, V.
S. P. SWANSON, EXECUTOR, APPELLANT.

FILED JULY 13, 1934. No. 28974.

L. B. McDonald and I. H. Floersch, for appellant.

George W. Pratt and D. B. Anderson, contra.

Heard before ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LESLIE and RYAN, District Judges.

ROSE, J.

This is a proceeding in equity to establish and enforce an alleged written contract under which Eva Nelson is said to have agreed that all property belonging to her at the time of her death should become the property of Evangelical Covenant Hospital, if she died therein. The hospital, an institution in Omaha, is claimant and plaintiff. The contract is dated April 10, 1931. Eva Nelson died in the hospital June 24, 1932. Plaintiff prayed for the establishment of the contract and for an order on S. P. Swanson, executor, defendant, to turn over to plaintiff all of decedent's property in his hands. Prior to the date of the alleged contract, Eva Nelson made a will which was duly probated July 22, 1932.

In an answer, the executor, defendant, denied unadmitted allegations of the petition, and pleaded in substance that Eva Nelson, April 10, 1931, the date of the

alleged contract, was old, mentally deficient, could neither read nor write and understood English imperfectly; that she had been led to believe that $2,000 which she had previously paid to plaintiff obligated the latter to provide her care and maintenance for life; that, if she signed the contract sought to be enforced, she was persuaded by fraud of plaintiff to do so; that she never intended to enter into such a contract; that, in any event, it was void for want of consideration. Defendant prayed that the alleged contract be declared void and that the proceeding be dismissed.

Upon a trial of the cause the district court decreed the validity of the contract, ordered enforcement thereof and directed the executor to turn over to plaintiff all money and other property belonging to decedent's estate, after paying the expenses of administration.

S. P. Swanson, executor, defendant, appealed to the supreme court, where the cause is for trial *de novo*, independently of the findings and decree of the court below. The contract which plaintiff seeks to enforce in equity is here copied:

"Agreement

"This agreement, made and entered into this 10th day of April, A. D. 1931, by and between the Evangelical Covenant Hospital, party of the first part, and Eva Nelson, party of the second part, witnesseth:

"Whereas, Eva Nelson is acquainted with the work being done by the Evangelical Covenant Hospital, and is desirous of doing what she can to promote the work of the said hospital; and

"Whereas, she now has two thousand ($2,000) dollars which she desires to donate to the said hospital for promoting its work; and

"Whereas, the hospital is in a position to use said donation to good advantage in promoting its work as a charitable institution, said donation of two thousand ($2,000) dollars from the said Eva Nelson, is herewith gratefully

accepted, and receipt of same acknowledged with thanks; and

"Whereas, she is desirous of having an opportunity of engaging herself and usefully occupying her time according as her health and ability will permit, during the remaining years of her life, she now being over seventy-five years of age; and

"Whereas, the Evangelical Covenant Hospital is prepared and willing ·to furnish said Eva Nelson with such employment, including care and support,

"It is, therefore, mutually agreed by and between said parties hereto that the said Evangelical Covenant Hospital, in consideration of the covenants on the part of Eva Nelson, hereinafter contained, will furnish said Eva Nelson such employment, with room, board and care, as long as she shall elect to remain with said hospital, and that in consideration of any service that she shall render, the said hospital shall pay her the sum of one ($1) dollar per week for and during such time as she shall be able to work, and that in the event of her being unable to work, she shall nevertheless receive board, room and care as long as she shall elect to remain with said hospital.

"In consideration of the foregoing, the said Eva Nelson agrees to accept such employment, and further agrees that in the event that she remains with the hospital until death, that any and all property belonging to her at her death shall thereupon be and become the property of the said Evangelical Covenant Hospital, in consideration for permanent employment and care.

"In witness whereof, we have hereunto subscribed our names this 10th day of April, A. D. 1931.

"Evangelical Covenant Hospital,

"By Chas. W. Swenson, President.

"Attest: Chas. O. Anderson, Secretary,

"Party of the first part. ·

"Eva X (her mark) Nelson, by Rose Wise,

"Party of the second part.

"Witness: Rose Wise, Olga W. Bengtson."

In view of issues to which both parties directed testimony, a court of equity should look into the place and the circumstances under which this contract was signed. Eva Nelson, in advance of such contract, paid Evangelical Covenant Hospital, plaintiff, $2,000 as early as April 8, 1931, for some purpose. The contract in controversy was signed later and is dated April 10, 1931, when she was an inmate. The transaction, according to plaintiff's witnesses, took place in an office occupied by Young, the head of the hospital, and Rose Wise, assistant superintendent of nurses. There were present on that occasion, Charles W. Swenson, president, Charles O. Anderson, secretary, who was also attorney, Rose Wise, assistant superintendent of nurses, Olga W. Bengtson, an employee of the hospital, all officers or employees who were interested in getting money for the hospital, and Eva Nelson. For plaintiff, Swenson signed as president, Anderson as secretary, and the name of the woman who is alleged to have contracted away her property was signed also by a representative of plaintiff—"Eva Nelson, by Rose Wise." The principal obligor's part in the execution is represented by a mark—"X." The evidence is that Eva Nelson was then past 80 years of age. Rose Wise who signed her name testified she was a frail little woman. She was in the custody of plaintiff with the understanding that it was for life, if she chose to remain that long. Under the circumstances the burden was on plaintiff to prove that she understood her property was to become the property of plaintiff if she died in the hospital. The following is settled law: Where one dealt with a woman who could neither read nor write, who had never transacted any important business without aid, and who made her mark to the instrument, it is incumbent on the former to show by a preponderance of the evidence that the latter fully understood the object and import of the writing she executed. *Selden v. Myers,* 20 How. (U. S.) 506; *Spelts & Klosterman v. Ward,* 2 Neb. (Unof.) 177; *Wixson v. Nebraska Conference Ass'n,* 122 Neb. 771. Eva Nelson was without counsel of her own selecting, when she

made her mark, and there was not a relative, or old friend, present. She was surrounded by plaintiff's officers and employees. The record does not show that she had an opportunity to call for independent advice or the aid of those who had preserved her earnings and other property for her from youth to helpless old age. In ordinary business transactions a testator, a donor or a grantor, who desires the drawing of a formal instrument disposing of property, calls upon an attorney and tells, him what is wanted. In the present instance the contract had been drawn in advance ready for execution without any evidence of a request from the inmate.

A considerable part of the testimony adduced by plaintiff was directed to the point that Eva Nelson understood the contract, was satisfied with it, and said so. Interested witnesses who were present testified that the contract was explained to her; that it was read to her four times, twice in English and twice in Swedish; that she seemed to understand it and said she understood it and was satisfied. Explanation was needed. Evidence to which credence should be given is to the effect that she was a native of Sweden and uneducated; could not write or read writing either in English or Swedish; could read only a little Swedish print and understood very little English; called on others to conduct her correspondence; never conducted, without aid, any important business for herself; could purchase groceries and other articles of little value, but did not trust herself in important matters or to make change in odd sums; depended on others to aid her in all important business transactions; had worked all her mature life as a domestic in homes and other places.

Notwithstanding testimony of interested witnesses that the contract was read, reread and explained, and that Eva Nelson said she understood it and was satisfied, there is convincing testimony that she never understood all her property would become the property of the hospital, if she died there. There is no evidence that she was asked directly if she knew that was what the contract meant.

Celia Johnson, a disinterested witness, testified she had known Eva Nelson 40 years; said she was frail and delicate; had worked all her life; was 82 or 83 years old at the time of her death; was not intelligent enough for ordinary conversation; called on her at the hospital just before Christmas, 1931, when Eva Nelson stated in effect she had paid $2,000 for her home and maintenance in the hospital as long as she lived; was to get back part of it if she left; that the reason she did not go to Immanuel Old People's Home was because that institution wanted her to sign over all her property to it and she did not want to do that.

Undisputed evidence shows that Eva Nelson was fond of her blood relatives; visited them; gave them presents; corresponded with them through friends with whom she made her home; bequeathed them, prior to the contract, her property by will which was duly probated July 22, 1932. Neither before nor after the date of the contract, therefore, according to undisputed evidence, did Eva Nelson intend to leave her property to plaintiff.

S. P. Swanson, also a native of Sweden, testified in substance that he was executor of Eva·Nelson's will; that he was not related to her and was not a beneficiary; that he became acquainted with her in Sweden 60 years ago; that she was an orphan without education; that she had made her home with witness and his wife or their married daughter for 40 years; that she did not take care of her own business; that she had money and earnings; that witness invested money and earnings for her in her own name in the Omaha Building & Loan Association for over 40 years; that she never personally made deposits; that she never had possession of her pass-books, witness having kept them always—had them at the time of the trial; that she did not know what money she had and paid no attention when told about it; that he had handled her money for her ever since she earned her first dollar; that when she needed money he went with her to the building and loan association and helped her to get it; that he never charged

for his services and she never paid him anything; that his wife or daughter helped her to buy her clothing, and aided her at times when making change, wrote her letters for her and read to her the letters she received; that she had about $8,000 in addition to what she had paid to the hospital; that she told witness she wanted to go to plaintiff's hospital for life and would have to pay $2,000; that he had $400 of hers in a safe deposit box, took it out of the box and gave it to her and she paid the cash to Young, the head of the hospital, who gave her a receipt reciting that the 400-dollar payment was "on account hospital care;" that she did not know what the receipt meant and wanted to give it back; that witness, in the office of the building and loan association, transferred to Young from her account, $1,600, asked Young if that was all she would pay, and he said, "Yes, that is all she is going to pay;" that, when witness gave her the $400, she said to him: "I will pay the hospital $2,000 and I can stay there the rest of my days * * * and that is all I will pay;" that she never said anything to witness about the contract to leave her property to the hospital, if she died there; that he never knew about it until after her death; that he would have prevented her from taking that step had he known about it.

This testimony came from a witness who had no pecuniary interest in the estate of decedent, though he had managed and preserved it for her from the time she earned her first dollar until she died at the age of 82 or 83 years. His testimony, in view of all the circumstances, is entitled to credence and prevails over testimony of interested witnesses that Eva Nelson said she understood the contract and was satisfied after it was read and explained. No evidence adduced by plaintiff has been overlooked. It has all been considered in connection with the surrounding circumstances. The preponderance of the evidence is in favor of the executor on the issue that Eva Nelson did not understand all her property would become the property of plaintiff, if she died in the hospital, and

that her mind did not meet with that of plaintiff on the main provision of the contract.

The contract treats the $2,000 which plaintiff received as a donation, whereas Young gave Eva Nelson a receipt for $400 of that sum, reciting that it was on account of hospital care. The rest of the $2,000, or the 1,600-dollar item, was transferred to Young with the distinct understanding that the whole was for home, care and maintenance during life, without obligation for any further payment. It is clearly shown by evidence to which credence should be given that Eva Nelson was received at the hospital under a distinct agreement that the $2,000 which she had paid was for home, maintenance and care during life. It follows that the subsequent contract for the rest of her property for the same home, maintenance and care, if she died in the hospital, was without consideration, the contract itself showing that such property was not the subject of a gift.

Plaintiff can rightfully claim nothing under the provision allowing Eva Nelson to earn a dollar a week for labor. Her name was signed by Rose Wise, assistant superintendent of nurses, who testified that the former was a frail little woman who could not perform any physical labor. She did, however, work in the kitchen at different times and never received a penny for her services.

Looking through technical forms of the written instrument to truth, right and justice, as disclosed by the evidence, a court of equity is not bound to enforce the contract in controversy. The judgment of the district court is reversed, the contract canceled, and the proceeding dismissed at the costs of plaintiff in both courts.

REVERSED, AND DECREE FOR DEFENDANT.