# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1230

_____

| | | |
|---|---|---|
| Teamsters Local 838, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Laidlaw Transit, Inc., | * | |
| | * | |
| Appellee. | * | |
| | * | |
| _____ | * | Appeal from the United States |
| | * | District Court for the Western |
| Danny Lee McConnell, Jacqueline C. | * | District of Missouri. |
| McGlothen, Teresa Martin, Barbara | * | |
| Hasim, Shirley Williams, Sandy | * | |
| Hamer, Glenn Robinson, and Leona | * | |
| Burbanks, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Laidlaw Transit, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  June 11, 1998

Filed:  September 22, 1998

_____

Before RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit Judges, and PANNER,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Laidlaw and the Kansas City, Missouri, School District entered into a contract in which Laidlaw agreed to provide school bus transportation for the 1993-1994, 1994-1995, and 1995-1996 school years. Although the contract was for a three-year period, the parties renegotiated its terms every year, and in January, 1995, Laidlaw and the school district began to discuss terminating the contract before the 1995-1996 school year. Despite the apparent lack of an official termination, Laidlaw seems to have known quite early in the year that it would not be required to provide bus service for the 1995-1996 school year.

On June 8, 1995, at the end of the school year, Laidlaw laid off its seasonal drivers and helped them to obtain summer unemployment benefits. In previous years, Laidlaw had rehired those drivers in September, and they reasonably expected to be rehired in September, 1995. At the end of June, however, Laidlaw learned that the school board had not assigned any bus routes to Laidlaw for the 1995-1996 school year. On July 7, Laidlaw notified its employees that it would be closing its Kansas City Terminal (the base of operations for its Kansas City School District service) on September 5, 1995, which was exactly 60 days after the notice, and that the employees would not be rehired there at the start of the new school year.

Teamsters Local 838 sued, alleging that Laidlaw had violated the Worker Adjustment and Retraining Notification Act (WARN Act), *see* 29 U.S.C.

_____

[1]The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

§§ 2101-2109, by failing to provide its seasonal employees with 60 days' notice of an impending plant closing. Eight nonunion employees brought a separate action, alleging that Laidlaw had violated the WARN Act by failing to provide its nonseasonal employees with the same notice. After the two cases were consolidated, the parties filed cross-motions for summary judgment. The district court granted partial summary judgment to each party, ruling that the seasonal employees received sufficient notice but that the nonseasonal employees did not. The court ordered Laidlaw to reimburse the nonseasonal employees for the period of the violation in accordance with the damages provisions of the WARN Act, *see* 29 U.S.C. § 2104(a)(1).

On appeal, Teamsters Local 838 argues that the district court erred in determining that Laidlaw did not violate the WARN Act with respect to its seasonal employees, and the nonseasonal employees argue that the district court erred in awarding them back pay on the basis of the number of workdays, rather than calendar days, in the relevant period. We affirm the judgment of the district court.[2]

## I.

The WARN Act requires an employer to give 60 days' written notice of a "plant closing" to affected employees or their representatives . *See* 29 U.S.C. § 2102(a)(1). The act defines a plant closing as "the permanent or temporary shutdown of a single site of employment, ... if the shutdown results in an employment loss at the single site of employment during any 30-day period." *See* 29 U.S.C. § 2101(a)(2). An "employment loss," as relevant here, is "an employment termination, other than a discharge for cause, voluntary departure, or retirement." *See* 29 U.S.C. § 2101(a)(6)(A). "Affected employees" are those employees "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing ... by their employer." *See* 29 U.S.C. § 2101(a)(5).

---

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

The seasonal employees rightly contend that, under the act, they were employees of Laidlaw even though they were on temporary layoff. According to an interpretive regulation promulgated by the Secretary of Labor, "[w]orkers on temporary layoff or on leave who have a reasonable expectation of recall are counted as employees." *See* 20 C.F.R. § 639.3(a)(1).

This regulation, however, defines the word "employee"; it does not add meaning to the term "affected employee." We believe that the seasonal employees were not "affected employees" under the act, because they did not suffer an employment loss as the result of Laidlaw's plant closing. Even though these workers were laid off after Laidlaw evidently knew of the impending plant closing, they would have been laid off in June in any case. The employment loss that they suffered in June, therefore, cannot have been a "consequence of a proposed plant closing." *See* 29 U.S.C. § 2101(a)(5). We also believe that it is not legally significant that their temporary layoff was eventually converted into a termination when the plant closed in September. At that time, they lost only the immediate expectation of being rehired, and loss of the expectation of employment is not an "employment loss" under the WARN Act. *See* 29 U.S.C. § 2101(a)(6)(A).

To the extent that these employees suffered anything resembling an employment loss as the result of the plant closing, they experienced it in September when they were not rehired for the new school year. For this employment loss, if it was one, they received sufficient WARN Act notification because of the July 7 notice from Laidlaw that its plant was going to close. *See, e.g., Marques v. Telles Ranch, Inc.*, 131 F.3d 1331, 1334 (9th Cir. 1997), and *Kalwaytis v. Preferred Meal Systems, Inc.*, 78 F.3d 117, 122 (3rd Cir. 1996), *cert. denied*, 117 S. Ct. 73 (1996). We therefore find that the district court properly granted Laidlaw's motion for summary judgment.

## II.

The WARN Act provides that any employer who orders a plant closing in violation of the act shall be liable to each affected employee for "back pay for each day of violation." *See* 29 U.S.C. § 2104(a)(1)(A). The eight nonseasonal employees contend that the district court erred in using workdays rather than calendar days to compute their damages. A recent case, however, has foreclosed that argument. In *Breedlove v. Earthgrains Baking Companies, Inc.*, 140 F.3d 797, 801 (8th Cir. 1998), *petition for cert. filed*, 67 U.S.L.W. 3083 (U.S. July 6, 1998) (No. 98-77), we held that a back-pay calculation for damages under the WARN Act is properly based on the number of workdays at issue, rather than on the number of calendar days, and we therefore find no error in the district court's calculation of damages.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

RICHARD S. ARNOLD, Circuit Judge, concurring in part and concurring in the judgment.

I join Part II of the Court's opinion and, in addition, agree with the result reached by Part I. My route to that result differs, however, somewhat. In my view, the seasonal employees were "affected" and did suffer an "employment loss" when the plant closed in September. But they received 60 days notice in advance of the closing, and that notice complied with the statute. Perhaps the employer should, in fairness, have given an earlier warning. The employees could have used the additional time to look for other work. But Laidlaw seems to me to have done all that the statute requires.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.