UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

Nos. 98-2294/98-2398

_____

Charles William Joe and          *
Thomas P. McNally,               *
                                 *
    Appellants/Cross-Appellees,   *
                                 *
                                 *   Appeal from the United States
    v.                            *   District Court for the
                                 *   District of Nebraska
First Bank System, Inc.,         *
A National Banking Association,  *
                                 *
    Appellee/Cross-Appellant.     *


_____

Submitted:  April 22, 1999
Filed:  February 11, 2000

_____

Before   RICHARD S. ARNOLD AND WOLLMAN,[1] Circuit Judges, and WOLLE,[2]
    District Judge

_____

WOLLE, District Judge.

---

    [1]The Honorable Roger L. Wollman became Chief Judge of this Court on April 24,
1999.

    [2]The Honorable Charles R. Wolle, United States District Judge for the Southern
District of Iowa, sitting by designation.

Appellants Charles W. Joe and Thomas P. McNally assert that First Bank System (FBS), now known as U.S. Bancorp, violated the Workers Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. §§ 2101-2109. Joe and McNally were employed at an Omaha office of FirsTier Bank, N.A. (FirsTier) when their employer merged with FBS, causing a mass layoff as defined by the WARN Act. A jury trial resulted in special verdicts (1) determining that Joe intended to release FBS from all claims when he signed a release upon receipt of severance benefits, and (2) that FBS had provided adequate WARN Act notice more than sixty days before Joe and McNally were terminated on February 16, 1996.[3] Ruling on post-verdict motions, the trial court dismissed Joe's claim based on the release he had signed, then upheld McNally's claim that he had not received WARN Act notice within sixty days of termination, as required for compliance. The court entered judgment dismissing Joe's claim and awarding McNally back pay for the ten workdays by which the notice fell short. All three parties appeal, but we affirm the judgments entered by the trial court.[4]

I. Joe was terminated on February 16, 1996, the day the merger was completed. A day or two before, an FBS manager gave Joe a written estimate of what FBS would pay him in severance benefits, together with the Separation Agreement and General Release it required him to sign. Joe took the papers to his attorney, discussed them with the attorney, then signed the documents and received severance pay in the amount of $22,663.70, together with additional pay for unused vacation. At trial, Joe challenged the release on several grounds. The jury found he intended to release his WARN Act claim, and the trial court ruled against him on contentions that the release

---

[3]This lawsuit was commenced by thirty-seven terminated employees who sought but were denied class action status. Only a few plaintiffs remained when trial began, and Joe and McNally are the only two plaintiffs who have appealed.

[4]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

had been signed before his claim accrued, had been signed under duress, and was without consideration.

A. Evidence supports the jury's special verdict finding Joe understood the language and purpose of the Separation Agreement and General Release. The language was unambiguous, providing in pertinent part:

> As essential inducement to FBS to enter into this Agreement, and as consideration for the promises of FBS in this Agreement, Employee hereby releases and discharges FBS and FirsTier Financial, Inc., . . . and all employee benefits plans sponsored by FBS and FirsTier Financial, Inc. and the trusts, trustees, officers and agents of such plans, from all liability for damages and agrees not to institute any claim for damages, by charge or otherwise, nor authorize any other party, governmental or otherwise, to institute any such claims, arising under or based upon any federal, state, or local employment or discrimination laws, regulations or requirements, including but not limited to . . . any contract, quasi contract, or tort claims, whether developed or undeveloped, including but not limited to those arising from or related to FBS's or FirsTier Financial, Inc.'s hiring of Employee, Employee's employment with FBS or FirsTier Financial, Inc. and Employee's cessation of employment with FBS or FirsTier Financial, Inc.

Joe and the attorney he consulted must have understood Joe was waiving all claims arising out of his employment, including any WARN Act claim. Like any contract, the scope of a release is determined by the parties' intent when they sign it. Mutz v. Citizens State Bank of Maryville, 966 F.2d 434, 438 (8th Cir. 1992).

Joe signed the release the day after his employment terminated. On that day, he knew what WARN Act notice he had and had not received before he was terminated.

-3-

He could have begun his WARN Act lawsuit before he signed the release. His claims had accrued before he signed the release.

B. Joe presented no meaningful proof of duress, not surprising since Joe had the release for two or three days and discussed it with his attorney. Public policy favors the enforcement of voluntary settlement agreements containing release language that is unambiguous, the circumstance here. See, e.g., Ulvin v. Northwestern Nat. Life Ins. Co., 943 F.2d 862, 867 (8th Cir. 1991), cert. denied, 502 U.S. 1073 (1992) (enforcing release of ADEA claim in consideration of severance payment); Leavitt v. Northwestern Bell Tel. Co., 921 F.2d 160, 162-63 (8th Cir. 1990) (enforcing release of ERISA claims though employee did not consult attorney); Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 541 (8th Cir.), cert. denied, 482 U.S. 928 (1987) (release of ADEA claim upheld when employee received severance payment though no attorney consulted).

C. In rejecting Joe's contention that the Separation Agreement and General Release was without consideration, the trial court made sequential rulings on several issues. We uphold the trial court's rulings and the release.

The severance payment to Joe was calculated and made pursuant to an FBS Nebraska Severance Pay program which the parties stipulated was an ERISA plan. FBS had amended the plan before the merger to condition payment of severance benefits on the employee's execution of a release.

Joe contends a FirsTier ERISA qualified severance pay plan that predated the bank merger entitled him to a larger severance payment than the payment he received under the FBS severance plan. He based this on language describing which FirsTier employees would be eligible for severance and what they would receive. Because he interpreted that plan's benefits to pay him more than the amount he received under the FBS plan, Joe argues he received no consideration when he signed the release. He

-4-

cites Nebraska common-law decisions holding a release unenforceable if a payment is one the released party already was under obligation to make. In re Nelson's Estate, 127 Neb. 563, 256 N.W. 27 (1934); Sallander v. Prairie Life Ins. Co., 112 Neb. 629, 200 N.W. 344 (1924).

The trial court rejected Joe's theory of no consideration. First the court reasoned that the FBS severance payment was made under an ERISA plan, preempting Joe's claim of a Nebraska common-law contract right to severance pay under the FirsTier plan. The trial court also held that FBS had no preexisting legal duty to pay Joe under either severance plan, because no severance benefits vested before the merger was completed. See Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry., 520 U.S. 510, 513-14 (1997). Several months before Joe and McNally were terminated, FBS merged the former individual benefit plans and informed Joe and other employees that severance would be paid only upon receipt of a signed separation agreement and general release.

Joe's claim under Nebraska law was preempted because it related to an employee benefit plan. 29 U.S.C. § 1144(a); see California Div. of Labor Standards Enforcement v. Dillingham Constr., 519 U.S. 316, 324 (1997) (ERISA preemption clearly expansive). Under the amended FBS plan, FBS retained the right to condition payment of any severance benefits on Joe first signing the release that he signed.

The trial court cited and relied on Warnebold v. Union Pac. R. R., 963 F.2d 222 (8th Cir.1992), in which our court upheld a release waiving an ADEA claim, with severance payments as consideration. The trial court also noted that in Warnebold, our court relied on a decision of the Court of Appeals for the Fourth Circuit that addressed a factual situation quite similar to the circumstances here. In O'Shea v. Commercial Credit Corp.. 930 F.2d 358, 362 (4th Cir.), cert. denied, 502 U.S. 859 (1991), the terminated employee had contended that she was entitled to severance pay without signing a release, and therefore the release was without consideration. The court

upheld the release, however, on the ground that the employer had the right unilaterally to amend or eliminate a severance plan or condition it upon signing of a release. We, too, find the O'Shea decision persuasive authority for upholding the FBS release defense.

We affirm the trial court's decision dismissing Joe's WARN Act claim.

II. Unlike Joe, McNally refused to sign the Separation Agreement and General Release that FBS tendered to him, thereby keeping alive his WARN Act claim. McNally contends FBS never gave him the information about his termination required by the WARN Act; FBS in its cross-appeal contends that it gave McNally the required information more than sixty days before McNally was terminated on February 16. The jury agreed with FBS, finding sufficient information was given more than sixty days before McNally was terminated. The trial court, however, held as a matter of law that notice was not sufficient until FBS sent McNally a letter on January 3, forty-four calendar days before his termination. We agree with that ruling.

Effective WARN Act notice must contain several categories of information, including the likely date when the mass layoff will occur and the expected date when the individual employee will be separated. 29 U.S.C. § 2102(a); 20 C.F.R. § 639.7(d). The letter McNally received from FBS on January 3 gave him that information and clarified earlier information that the statute required he be given. The newsletters and notices FBS earlier posted or mailed its employees did not adequately inform McNally when the merger would be complete and when he would be terminated.

Had the January 3 letter been sent by FBS to McNally at least sixty days before he was terminated on February 16, it would have satisfied the WARN Act's timeliness requirement. But the January 3 letter to McNally was late by sixteen calendar days, within which were ten workdays.

In its cross-appeal, FBS argues that it was in good faith in attempting to give timely WARN Act notice, and the court should have exercised its discretion to find no

violation or at least reduce the liability provided by the WARN Act.  29 U.S.C. § 2104(a)(4).  We defer to the trial court's advantage in observing FBS witnesses at trial and making credibility decisions about good faith.  No persuasive evidence suggests that FBS believed its notices and memoranda before January 3 complied with the WARN Act.  To the contrary, the record suggests that FBS had information about when the merger would be completed that it could have provided to McNally well before it mailed him the January 3 letter that belatedly satisfied the WARN Act information requirements.  FBS did not sustain its good faith defense.

III.  An employer who violates the WARN Act is liable for "back pay for each day of violation."  29 U.S.C. § 2104(a)(1)(A).  McNally contends the trial court erred in awarding damages for only ten workdays rather than the sixteen calendar days by which the FBS notice fell short.  We have twice rejected that reading of the statute and follow our precedent in upholding the trial court's award of back pay based on workdays.  See Teamsters Local 838 v. Laidlaw Transit, Inc., 156 F.3d 854, 855 (8th Cir. 1998); Breedlove v. Earthgrains Baking Cos., 140 F.3d 797, 801 (8th Cir.), cert. denied, 124 L. Ed. 2d 228 (1998).

We affirm the trial court's judgment dismissing Joe's WARN Act claim and awarding McNally judgment against FBS for back pay for ten workdays.

AFFIRMED.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-