**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

JULIE ALLEN, BRYAN BENSON, JESSICA BENTZ, MATTHEW BESS, MARK BRADLEY, GREGORY ALLEN BURGESS, JASON CARONE, JEFFREY L. COBURN, FREDRIC KARL EGAN, AUGUSTO JAY FALCO, ELLEN GENTRY, JOHN JEFFREY HANSON, DANIEL H. HODGSON, MICHAEL JENSEN, BEN KAFKA, KORMAN KING, CARRIE LILJENQUIST, MARSHA LUDLOW, GLENN McINTOSH, WILLIAM MULLOY, ANGELA PERRY, STEVEN PETERSON, JOHN H. SERMON, H. ALAN STRANGE, LANE WALTERS, BEN P. WILLIS,

    Plaintiffs-Appellees,

v.

SYBASE, INC., a Delaware corporation; FINANCIAL FUSION, INC., a Delaware corporation,

    Defendants-Appellants.

No. 04-4045

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:03-CV-149-TC)**

---

Felicia R. Reid (John F. Baum and Melissa E. Lamfalusi, with her on the briefs) of Curiale Dellaverson Hirschfeld & Kraemer, LLP, San Francisco, California, for Defendants-Appellants.

Barnard N. Madsen (Mark D. Stubbs with him on the brief) of Fillmore Spencer LLC, Provo, Utah, for Plaintiffs-Appellees.

Before **KELLY**, **SEYMOUR,** and **EBEL**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Plaintiffs, twenty-six[1] former employees of Financial Fusion, Inc. (FFI), filed suit against FFI and its parent company, Sybase, Inc., (Sybase) (defendants), for violations under the Worker Adjustment and Retraining Notification Act (WARN). 29 U.S.C. § 2101 *et seq.* The parties filed cross motions for summary judgment, and the district court ruled for plaintiffs. The court subsequently entered final judgment ordering defendant companies to pay damages, interest and attorneys fees to plaintiffs in accordance with WARN. Defendants appeal. We affirm in part, reverse in part, and remand for further proceedings.[2]

I

In order to place the facts of this case in their relevant context, we begin with a preliminary discussion of WARN, which we will develop more fully in our analysis. WARN is a remedial statute that generally

provides protections to workers, their families and communities by

---

[1]Originally, plaintiffs numbered twenty-eight, but two individuals withdrew from the suit on October 14, 2003.

[2]We grant defendants' Motion to Strike Attachment 1 to Appellees' Brief.

requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

20 C.F.R. § 639.1(a).[3] WARN directs that an employer can be liable for up to sixty days' back pay and benefits to certain employees who lose their jobs as part of a plant closing or mass layoff[4] without receiving sixty days' advanced notice. *See* 29 U.S.C. § 2104(a)(1).[5] An employer may be excused from the sixty-day notice requirement where a mass layoff was the result of an unforseen business circumstance. *Id.* at § 2102(b)(2)(A). Nevertheless, an employer "shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." *Id.* at § 2102(b)(3). WARN also directs that a number of smaller employment losses over a ninety-day period may

_____

[3]Pursuant to the statute, the Department of Labor is to "prescribe such regulations as may be necessary to carry out [the Act]." 29 U.S.C. § 2107(a). "The regulations are thus promulgated by the Department of Labor pursuant to statutory authority, and, if substantive, they have the force of law unless they are irreconcilable with the clear meaning of a statute, as revealed by its language, purpose, and history." *United Mine Workers of Am. v. Martinka Coal Co.*, 202 F.3d 717, 720 n.2 (4th Cir. 2000) (quotations and citations omitted).

[4]As we will discuss in more depth below, and as relevant here, a mass layoff or plant closing generally occurs when fifty or more employees equaling thirty-three percent of an employer's work force at a single site are laid off during a thirty-day period. 29 U.S.C. § 2101(a)(2)-(3).

[5]Employers are held equally liable under WARN for failure to provide the required advance notice for plant closings and mass layoffs. This case relates to a mass layoff.

be aggregated to constitute a mass layoff, thereby imposing on an employer the obligation to provide either statutory notice or sixty days' back pay in lieu of notice to relevant employees. *Id*. at § 2102(d). In these situations, however, the employer may disprove the existence of a mass layoff if it shows that the individual sets of employment losses were for separate and distinct causes. *Id*.; 20 C.F.R. § 639.5(a)(1)(ii).

Having outlined the basic principles of WARN, we turn to the facts of this case. Plaintiffs were employed by FFI, a software company specializing in retail banking and capital markets software, with a broad base of its clients located in New York City's financial district. FFI is headquartered in Concord, Massachusetts, but has facilities in various states across the country, including one located in Orem, Utah, where plaintiffs were employed.

FFI is a wholly owned subsidiary of Sybase. Sybase acquired FFI in March 2000. During the 2000 fiscal year, FFI reported an operating loss of approximately $20.3 million. According to Sybase's Chief Financial Officer, Pietier Van der Vorst, FFI continued to operate at a loss throughout the first three quarters of 2001 and

> fell far short of the revenue and project targets that Sybase had budgeted for FFI in 2001. . . . Sybase's management team repeatedly communicated to FFI throughout 2001 that, in order for FFI to meet the financial target numbers that had been established by Sybase, it would need to take actions to reduce its operating costs.

Aplt. App. at 188. Sybase directed FFI that it needed to be profitable by the

fourth quarter of 2001.

In an effort to meet Sybase's financial targets, FFI engaged in a series of small layoffs during the first two quarters of 2001. The company dismissed four employees during the first quarter and five in the second quarter. But FFI's operating costs still exceeded its revenues: during the first quarter of 2001, FFI operated at a loss of $11 million; during the second quarter, the loss was $5.6 million.

In early August 2001, the middle of the third quarter, FFI cancelled production for a product scheduled to be released during the first quarter of 2002. It then moved all the project engineers who were assigned to the 2002 product, including a majority of plaintiffs, to work on a different product with a release date of September 24. During this same time frame, FFI planned a layoff in comparable size to the job terminations earlier in the year. On September 7, 2001, the company terminated four employees at the Orem location, all of whom eventually became plaintiffs in the instant case. FFI did not provide the employees with advance notice of the terminations, nor sixty days' pay in lieu of such notice pursuant to WARN.

The terminated employees were offered a severance package in exchange for signing a release form in which they waived any claims they had against the company. The relevant language in the form read:

I agree that my Severance Benefit is in full satisfaction of any

> claims, liabilities, demands or causes of action, known or unknown, that I ever had, now have or may claim to have had against the Company or any [of] its parents . . . as of the date of this Release, except claims for workers' compensation insurance and unemployment insurance benefits. Any claims, whether for discrimination, including claims under state law, Title VII of the Civil Rights Act of 1964 or the Age Discrimination in Employment Act, wrongful termination, breach of contract, breach of public policy, physical or mental harm or distress or any other claims, are hereby forever released and I agree and promise that I will not file any legal action asserting any such claims.

*Id.* at 280. The employees were given seven days to consider the agreement and consult with a lawyer, and were allowed an additional three days following execution of the agreement to rescind. None of the employees consulted with an attorney and each returned the signed waiver.

On September 24, 2001, FFI met its release date for the new product. Four days later, on or about September 28, 2001, and two weeks after the September 11, 2001 airplane bombings of the World Trade Center and the Pentagon (9/11 bombings), FFI dismissed forty-one employees, many of whom had worked to ensure that FFI's new product was released on time. As with the employees dismissed on September 7, none were provided advance written notice of the terminations nor, in the alternative, sixty days' pay and benefits under WARN. Likewise, each of these employees signed a release form in exchange for a severance package from FFI. Twenty-four of these fired employees became the remaining plaintiffs in this case. FFI's third quarter losses were slightly improved, equaling $4.9 million, but nonetheless contributed to a total of $21.5

million in losses thus far in 2001.

In October, Sybase's Chief Financial Officer initiated "a plan to restructure and consolidate on a company-wide basis Sybase's Information Technology ('IT') operations." *Id*. at 189. In accordance with this plan, "Sybase directed FFI to eliminate 6 IT positions at its Orem, Utah site. The elimination of these 6 positions was the result of Sybase's corporate consolidation and was unrelated to FFI's financial condition." *Id*. In conjunction with the six dismissals ordered by Sybase, FFI decided to terminate an additional five employees from its Orem office "in an effort to cut fourth quarter expenses." *Id*. at 193. The dismissals occurred on October 31, 2001.

FFI's human resources director, Neil Morris, was aware of WARN's notice and payment requirements and recognized that with the October 31 dismissals, the company had fired more than fifty employees over a ninety-day period at the Orem site. Therefore, FFI provided the eleven employees fired on October 31 with sixty days' pay and benefits "in satisfaction of any obligations [the company might] owe under state or Federal law." *Id*. at 196. In January 2002, Sybase proudly reported that FFI "bettered its [fourth quarter] forecast revenues and expenses to produce the company's first profitable quarter." *Id*. at 79.

Plaintiffs filed this action on February 7, 2003, claiming they were fired without notice in a mass layoff and defendants were therefore obligated to provide them with sixty days' back pay and benefits. Defendants denied liability

under WARN and argued that, in any event, plaintiffs had waived any WARN claims by signing the releases. With respect to WARN, defendants asserted that the job terminations between September 7 and October 31 did not represent a planned mass layoff triggering any statutory obligations, and that the three different layoffs during the relevant ninety-day period were separate and distinct within the meaning of the Act. Finally, they claimed any potential WARN liability should be excused under the unforseen business circumstances exception contained in the Act.

Plaintiffs filed a motion for summary judgment on May 2, 2003, contending they lost their jobs in a mass layoff without notice in violation of WARN. On that same date, the court issued its scheduling order for the case, setting the discovery deadline for October 15, 2003. On August 8, defendants filed a cross motion for summary judgment contending plaintiffs had waived any WARN claims by signing the releases. A magistrate judge was appointed to address non-dispositive matters for the case. Plaintiffs moved to strike portions of the affidavit of Neil Morris, which defendants had submitted to support their argument that the September 28 layoffs were the result of the unforeseen economic impact associated with the 9/11 bombings. Plaintiffs asserted that statements in the Morris affidavit constituted inadmissible hearsay. The magistrate judge denied plaintiffs' motion on October 3, 2003. During the summary judgment hearing before the district court on November 25, however,

the court reconsidered the magistrate judge's ruling and granted plaintiffs' motion to strike.

The district court subsequently granted summary judgment in favor of plaintiffs, concluding that

> [t]he WARN Act and its implementing regulations make clear that within any ninety-day period, all terminated employees (including the first employee terminated during that period) who are properly aggregated under Section 2102(d) are entitled to notice or, where notice has been denied, to the remedy of sixty days of pay and benefits lost, and possibly reasonable attorneys's fees.

*Id.* at 959. The court held defendants had failed to satisfy their burden of establishing that the three sets of layoffs between early September and late October stemmed from separate and district causes under WARN. The court reasoned that even if the purpose for firing six of the employees in October was due to the reorganization plan implemented by Sybase, the remaining five employees were dismissed as part of FFI's ongoing efforts to reduce its costs and meet Sybase's financial targets. According to the court, those five employees contributed to a total of fifty-one dismissed workers. *Id.* at 962 n.3.[6]

_____

[6]The parties do not contest that FFI fired over fifty employees equaling thirty-three percent of its work force over a ninety-day period. Likewise, it appears the parties and the district court agree that the total number of employees fired during this period equaled fifty-seven. We have been unable, however, to determine how the parties and district court reached that number. Based on our review of the parties' briefs and the record on appeal, it appears that on September 7, FFI fired four employees. On September 28, it fired an additional forty-one employees. Finally, on October 31, a total of eleven employees were fired from FFI's Orem site. Based on our calculations, the number of laid off

(continued...)

-9-

The court also determined plaintiffs did not waive their WARN claims by signing the release forms. The court read the language in the release to waive any past or present claims plaintiffs had at the date they signed the agreement, but to exclude future claims. The court concluded plaintiffs' claims did not arise until October 31, 2001, when the final set of employees was laid off and resulted in an aggregated mass layoff under WARN. The court reasoned that because the WARN violations came into being after plaintiffs signed their release forms, they had not waived those claims.

Finally, the court concluded defendants had not satisfied their burden to show that the job terminations initiated on September 28 were due to the unforeseen financial impact of the 9/11 bombings on FFI. Although defendants argued to the district court that they needed "more time to determine whether September 11, 2001 indeed caused the layoffs," the court rejected this claim, stating "Defendants have had ample time (over two years since September 11, 2001) to make that determination, and . . . have failed to provide any admissible evidence." *Id.* at 965. The court granted summary judgment in favor of plaintiffs and ordered FFI and Sybase to pay the former employees sixty days' pay, plus costs and reasonable attorneys fees, as required by WARN.

---

[6](...continued)
employees equals fifty-six, not fifty-seven, as the parties and court seem to agree. This apparent but uncontested discrepancy is of no matter. In terms of determining defendants' liability under WARN, the one employee difference does not implicate our analysis.

Defendants raise a number of issues on appeal in challenging the district court's ruling. First, they contend that *if* there was a WARN violation, plaintiffs waived their rights to seek redress by signing the release forms. Second, they assert there was no mass layoff under WARN because the three sets of employee terminations were for separate and distinct causes. Defendants also argue they should have been excused from any WARN obligations because the forty-one layoffs in September were precipitated by the unforeseeable financial impact of the 9/11 bombings. In this context, they challenge the district court's decision to exclude certain statements from the Morris affidavit. Finally, they contend they are not liable under WARN because a mass layoff was not planned or intended, and hence the individuals who lost their jobs are not "affected employees" entitled to relief under the statute.

"On cross-motions for summary judgment, our review of the summary judgment record is de novo and we must view the inferences to be drawn from affidavits, attached exhibits and depositions in the light most favorable to the party that did not prevail," in this case the defendants. *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also NISH v. Rumsfeld*, 348 F.3d 1263, 1266 (10th Cir. 2003). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

-11-

moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).


II

We begin by examining whether defendants can be held liable to plaintiffs for a mass layoff under WARN. In this regard, defendants concede the number of employees fired over a ninety-day period exceeded fifty. They argue that even so, the different layoffs were for separate and distinct causes and did not constitute a mass layoff.

A.  WARN liability generally

When one considers WARN in broad strokes, it is easy to understand. An employer who engages in a mass layoff and does not give its employees sixty days' notice of the impending job terminations is liable for up to sixty days' pay and benefits to those employees who lost their jobs. This case, however, cannot be reduced to broad general strokes. Rather, we must sort out the particular facts and determine how they fit within the Act's aggregated mass layoff provision, 29 U.S.C. § 2102(d).

Unfortunately, WARN is less than clear with respect to mass layoffs occurring in an aggregation setting. As we highlight below, the statute and regulations generally speak in terms of planned, proposed, and foreseeable mass layoffs and employer liability that arises from failure to provide notice in those settings. Although WARN creates employer liability for aggregated mass layoffs

-12-

under § 2102(d), it does not explicitly state how and when employer duties arise in an aggregated setting. Nor have we been able to find any directly relevant case law to guide us in resolving the instant controversy. As our colleagues on the Fourth Circuit commented, "while it is clear that the intent of the WARN Act would have all affected employees given 60 days' notice before their layoffs to permit them to arrange their employment affairs, the specific language of the Act is inartful, if not confusing." *United Mine Workers of Am. v. Martinka Coal Co.*, 202 F.3d 717, 720 (4th Cir. 2000).

We begin with the portion of the statute that specifically outlines the terms of an employer's liability. Section 2104(a) of WARN states

> [a]ny *employer who orders a plant closing or mass layoff in violation of section 2102* of this title *shall be liable to each aggrieved employee who suffers an employment loss* as a result of such closing or layoff *for – (A) back pay* for each day of violation at a rate of compensation not less than the higher of – (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or (ii) the final regular rate received by such employee; *and (B) benefits* under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred. Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

29 U.S.C. § 2104(a)(1) (emphasis added). An "employer" is ". . . any business enterprise that employs – (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least

4,000 hours per week (exclusive of hours of overtime) . . . ." *Id.* at § 2101(a)(1).

A "mass layoff" is

> a reduction in force which – (A) is not the result of a plant closing;[7] and (B) results in an employment loss at the single site of employment during any 30-day period for – (i)(I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees) . . . .

*Id.* at § 2101(a)(3).[8]

In further fleshing out the pertinent terms in § 2104(a)(1), the relevant portion of § 2102 of WARN dictates that "[a]n employer shall not order a . . . mass layoff until the end of a 60-day period after the employer serves written notice of such an order – (1) to each . . . affected employee . . . ." *Id.* at § 2102(a). An "affected employee" is one "who may reasonably be expected to experience an employment loss as a consequence of a proposed . . . mass layoff by their employer . . . ." *Id.* at § 2101(a)(5).[9] In other words, an affected

---

[7]

> [T]he term "plant closing" means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees . . . .

*Id.* at § 2101(a)(2).

[8]Neither subsections (B)(i)(II) or (B)(ii) of § 2101(a)(3) are at issue in this case.

[9]In determining when, and to whom, notice should be given, the WARN
(continued...)

employee is someone who reasonably could be expected, by virtue of a mass layoff, to suffer an employment loss. As relevant here, an employment loss means "an employment termination, other than discharge for cause, voluntary departure, or retirement." *Id.* at § 2101(a)(6). Finally, an "aggrieved employee" is "an employee who has worked for the employer ordering the plant closing or mass layoff and who, as a result of the failure by the employer to comply with section 2102 of this title, did not receive timely notice . . . as required by section 2102 of this title." *Id.* at § 2104(a)(7). Hence, an aggrieved employee is an affected employee who loses his job in a mass layoff without the required notice.

Generally, therefore, when an employer foresees it could lay off enough employees to constitute a mass layoff under WARN, the employer must provide

_____

[9](...continued)
regulations indicate that

> notice must be given at least 60 calendar days prior to any planned plant closing or mass layoff, as defined in these regulations. *When all employees are not terminated on the same date, the date of the first individual termination within the statutory 30-day or 90-day period triggers the 60-day notice requirement.* A worker's last day of employment is considered the date of that worker's layoff. *The first and each subsequent group of terminees are entitled to a full 60 days' notice.* In order for an employer to decide whether issuing notice is required, the *employer should – (i) Look ahead 30 days and behind 30 days to determine whether employment actions both taken and planned will, in the aggregate* for any 30-day period, *reach* the minimum numbers for a plant closing or *a mass layoff* and thus trigger the notice requirement . . . .

20 C.F.R. § 639.5(a)(1) (emphasis added). The ninety-day period mentioned in the regulation is associated with aggregated mass layoff claims under 29 U.S.C. § 2102(d), an issue we address *infra*.

-15-

its employees with sixty days' advance notice. When the employer fails to do so, it must pay the terminated employees up to sixty days' back pay and benefits in lieu of notice. But as this case illustrates, business layoffs are not always so tidy or contained. Section 2102(d) of the statute acknowledges that sometimes the requisite number of employment losses sufficient to constitute a mass layoff might not occur during a single thirty-day period. Rather, they might occur in smaller increments, which in the aggregate and over a ninety-day period will constitute a mass layoff. WARN specifically directs that

> in determining whether a . . . mass layoff has occurred or will occur, *employment losses for 2 or more groups at a single site* of employment, each of which is less than the minimum number of employees specified in section [2101(a)(3)] of this title but *which in the aggregate exceed that minimum number*, and which occur *within any 90-day period shall be considered* to be a plant closing or *mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter.*

*Id.* at § 2102(d) (emphasis added). The statute thus "imposes an affirmative burden on the employer to prove that the court should disaggregate employment losses that occurred during the 90-day period." *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 383 (5th Cir. 2000). If the employer does not satisfy this burden, the aggregate number of employees who have lost their jobs, "*shall be considered* to be a . . . mass layoff . . . ." 29 U.S.C. § 2102(d) (emphasis added).

Between September 7 and October 31 – a fifty-eight-day period – defendants dismissed fifty-six employees. There has been no assertion that these

-16-

terminations represent less than thirty-three percent of the full time work force at the FFI Orem site, or that FFI is not an employer under WARN. *See id.* at §§ 2101(a)(1); 2101(a)(3)(B)(i)(I). Applying § 2102(d) to this case, enough employees were laid off to constitute an aggregated mass layoff under WARN unless defendants establish those job losses were for separate and distinct causes.

B.  Separate and distinct causes

A mass layoff will not be deemed to have occurred if the employer can show the employment losses were the "result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of" WARN. *Id.* at § 2102(d). We agree with the district court that defendants have not sufficiently raised an issue of fact on this point to survive summary judgment.

Defendants' argument regarding the separate and distinct causes for the three sets of layoffs represents a moving target. In their motion for summary judgment they argued that

> *six of the employees* terminated by FFI on October 31, 2001, were laid off due to the "separate and distinct cause" of Sybase's IT reorganization plan. . . . FFI's termination of these six IT employees was unrelated to the financial difficulties that precipitated the other layoffs at Orem within the 90-day period.

Aplt. App. at 184 (emphasis added). They appeared to contend that the six Sybase IT October layoffs were separate and distinct from the September employment losses, and therefore no mass layoff occurred. On appeal, however, defendants shift their argument somewhat. In their opening brief they contend

-17-

each of the layoffs in this case arose from distinct causes. They assert the four September 7 job terminations were caused by FFI's financial difficulties, while the forty-one employment losses on September 28 were the result of "the significant financial fallout from the events of 9/11." Aplt. Br. at 52. Finally, they maintain the October 31 layoff of eleven employees was due to Sybase's reorganization of its IT department. Defendants argue accordingly that the September 28 layoffs were separate and distinct from the September 7 layoffs, so those two layoffs should not be aggregated. They claim, "[f]inancially-based layoffs *after* September 11 were due to the new and different post-9/11 economic realities. When the four September 7 layoffs are left out of the total, the number of layoffs attributable to cost cutting measures in the wake of 9/11 is 46." *Id.* at 52 (emphasis added). Hence, in contrast to their argument before the district court, defendants now appear to assert that the first set of job terminations in September are separate and distinct from the other two rounds of layoffs.

In their reply brief, defendants morph their "separate and distinct" argument back to something more akin to the position they presented to the district court. In this incarnation, they place the line of demarcation for separate and distinct employment actions after the September 28 firings. They claim "[i]t is clear that the *entire* October 31 [layoff] was due to causes separate and distinct from either of the September layoffs and should not be aggregated with them." Aple. Reply Br. at 18.

We are underwhelmed by defendants' inconsistent arguments and limit our review to the position they presented to the district court. *See Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 798-99 (10th Cir. 1996) ("[W]here a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial or presents a theory that was discussed in a vague and ambiguous way the theory will not be considered on appeal." (quotations and citation omitted)). As to defendants' initial argument, it is immaterial that the separate and distinct cause for six of the employment losses on October 31 was Sybase's reorganization of its company-wide IT department. Even excluding those six employees from the mass layoff calculation, FFI made the independent decision to fire another five employees "in an effort to cut fourth quarter expenses." Aplt. App. at 193. When one adds together the four employees from the September 7 job terminations, the forty-one employees from the September 28 terminations, and the five employees from the October 31 terminations, the total employment losses equals fifty.[10] It was defendants' burden to present evidence that the employment losses were due to something other than FFI's efforts to meet Sybase's mandate to be profitable by the final quarter of 2001. They failed to meet that burden. *See United Paperworks Int'l Union v. Alden Corrugated Container Corp.*, 901 F. Supp. 426, 435-36 (D. Mass.

---

[10]*See supra* note 6.

-19-

1995) ("Bates has failed to carry its burden of proof [of separate and distinct causes for the layoffs] as allocated under § 2102(d)."). In the absence of evidence showing the employment losses were for separate and distinct causes and not all the result of FFI's precarious financial situation, the job terminations were properly aggregated to constitute a mass layoff under § 2102(d) of WARN.

III

Even if an aggregated mass layoff occurred, defendants argue they are not liable under WARN because plaintiffs released any such claims. In the alternative, they assert they escape liability under WARN's exceptions for unforseen business circumstances, or because plaintiffs were not "affected persons" entitled to relief as aggrieved parties under the statute. We address each argument in turn.

A. The release forms

In defendants' motion for summary judgment, they contended plaintiffs waived their rights to bring a civil action against them when they signed the release forms. Defendants posit that if they violated WARN in any manner, the violations necessarily occurred at the time FFI terminated the plaintiffs without prior notice. They state "a WARN Act claim accrues when an employee is notified that he or she is being terminated without having been given the requisite 60 days' advance notice." Aplt. Br. at 32. They thus assert plaintiffs' WARN

-20-

claims were in existence at the time they signed the release forms and therefore were waived.

A WARN violation can occur only after a number of elements are satisfied, which, due to the nature of an aggregated mass layoff, will not all happen at the same time. First and foremost, there must be a mass layoff. Then, it must be determined whether the employees who comprised the mass layoff should have received notice, *i.e.*, were affected employees. However, unless and until the mass layoff threshold is crossed, the employer has not violated WARN. Hence it is the occurrence of a mass layoff that is crucial to trigger potential WARN liability for an employer. *See, e.g., Amatuzio v. Gandalf Sys. Corp.*, 994 F. Supp. 253, 276 (D. N.J. 1998) (indicating no WARN liability can be considered prior to determining whether a mass layoff occurred); *Bradley v. Sequoyah Fuels Corp.*, 847 F. Supp. 863, 867 (E.D. Okla. 1994) (first element in considering a WARN claim is whether a mass layoff has occurred).

Arguing to the contrary, defendants cite a number of cases they claim support their position that an employee's WARN claim accrues at the time the employee learned of his or her termination. *See Joe v. First Bank Sys., Inc.*, 202 F.3d 1067 (8th Cir. 2000); *Frymire v. Ampex Corp.*, 61 F.3d 757 (10th Cir. 1995); *Hooper v. Polychrome, Inc.*, 916 F. Supp. 1111 (D. Kan. 1996); *Auto. Mech. Local 701 v. Santa Fe Terminal Servs., Inc.*, 830 F. Supp. 432 (N.D. Ill. 1993); *Wholesale & Retail Food Distrib. Local 63 v. Santa Fe Terminal Servs., Inc.*, 826

F. Supp. 326 (C.D. Cal. 1993).[11] Not only are these cases distinguishable from the present controversy, they do not stand for the precise proposition urged by defendants. First, the cited cases imply, if not directly state, that the terminated employees' WARN claims accrued at the time they lost their jobs, rather than on the date they learned they would lose those jobs. *See Joe*, 202 F.3d at 1070; *Frymire*, 61 F.3d at 763; *Hooper*, 916 F. Supp. at 1113; *Wholesale & Retail Food Distrib. Local 63*, 826 F. Supp. at 331-32. Second, none of these cases addresses the accrual of a WARN claim in an aggregated mass layoff under § 2102(d). Finally, in *Joe*, *Frymire*, *Hooper*, and *Wholesale & Retail Food Distrib. Local 63*, it appears all of the terminations that constituted mass layoffs or plant closings occurred on the same date. *See Joe*, 202 F.3d at 1069-70; *Frymire*, 61 F.3d at 762-63; *Hooper*, 916 F. Supp. at 1113; *Wholesale & Retail Food Distrib. Local 63*, 826 F. Supp. at 331-32. It makes perfect sense that where terminations coincide with the occurrence of a mass layoff or plant closing, an employee's WARN claim would accrue at that time. The same cannot be said regarding an

---

[11]As noted above, defendants assert "a WARN Act claim accrues when an employee is notified that he or she is being terminated without having been given the requisite 60 days' advance notice." Aplt. Br. at 32. We are not convinced this is what they mean. Based on the cases cited by defendants, it would appear that what defendants really mean is that a WARN claim accrues on the date of an employee's termination. Indeed, in their reply brief, defendants slightly restate their position as "WARN Act claims accrue at the time the employee is terminated and/or notified of termination without the requisite 60 days advance notice." Aplt. Reply Br. at 5.

aggregated mass layoff.

*Auto. Mech. Local 701* is factually distinguishable from the instant controversy. The court there addressed a statute of limitations issue involving whether the employees had suffered job terminations or had been merely laid off. 830 F. Supp. at 434. Pursuant to WARN, a *job termination* "immediately qualifies as an employment loss, but a *layoff* must last for more than six months to qualify as an employment loss." *Id.* at 433 (citations omitted and emphasis added). With respect to the accrual date for the employees' layoff, the court disagreed with the employer's assertion that the employees' claims accrued at the time of the layoff, determining instead that the claims would accrue six months after the layoff. *Id.* at 434-35. If, in the alternative, the employees suffered job terminations, the employees' claims still fell within the relevant statute of limitations applied by the court. *Id.* at 437.

We decline to categorically hold that an employee's WARN claim accrues at the time of termination without notice. Rather, accrual will be determined based on the satisfaction of a number of different elements. A claim accrues when there is (1) a mass layoff conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled notice. In the instant case, barring determination of whether plaintiffs were "aggrieved" employees, these elements were satisfied on October, 31, 2001, the date FFI terminated enough employees to constitute a mass layoff under § 2102(d) of WARN. It was not until

that date that plaintiffs' claims came "into existence as an enforceable claim or right." BLACK'S LAW DICTIONARY 22 (8th ed. 2004).

Having established the date upon which plaintiffs' claims accrued, the question remains whether plaintiffs, in signing the release forms, waived their right to seek legal redress for the WARN violations. The pertinent language in the release forms stated

> I agree that my Severance Benefit is in full satisfaction of any *claims, liabilities, demands or causes of action, known or unknown, that I ever had, now have or may claim to have had against the Company or any [of] its parents . . . as of the date of this Release*, except claims for workers' compensation insurance and unemployment insurance benefits. Any claims, whether for discrimination, including claims under state law, Title VII of the Civil Rights Act of 1964 or the Age Discrimination in Employment Act, wrongful termination, breach of contract, breach of public policy, physical or mental harm or distress or any other claims, are hereby forever released and I agree and promise that I will not file any legal action asserting any such claims.

Aplt. App. at 280 (emphasis added). We agree with the district court that "the language of the Agreement, specifically the language 'as of the date of this Release,' limits the waiver to claims past and present on the date of signing, and excludes future claims." Aplt. App. at 961. In particular, the phrase "may claim to have had" only implicates claims made in the future, rather than claims that arise in the future. Although the phrase "may claim" indicates futurity, use of the past tense ("to have had") refers back to the date of the releases. That is, each release only encompasses claims that the signer "ever had," that the signer "now

-24-

ha[s]," or that the signer "may [in the future] claim to have had . . . [in the past,] as of the date of [the] Release." Aplt. App. at 280. Because the plaintiffs' WARN claims did not accrue until the mass layoff occurred on October 31, 2001, those claims were not in existence "as of the date of [the] Release." *Id.* at 280. Therefore, plaintiffs did not waive their rights to sue defendants for violation of their WARN Act rights.

B. Unforeseen business circumstances

Defendants also claim refuge from liability under WARN's exception for unforeseen business circumstances. The statute directs that "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A); *see also* 20 C.F.R. § 639.9(b)(1) (unforeseen business circumstance "is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control," such as "[a] principal client's sudden and unexpected termination of a major contract with the employer, a strike at a major supplier of the employer, and an unanticipated and dramatic major economic downturn . . . .").

"The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly

situated employer in predicting the demands of its particular market." 20 C.F.R. § 639.9(b)(2). Commentary to the regulations indicates this is "an objective test [which focuses] on the commercial reasonableness of the employer's actions." Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16,042, *16,062 (April 20, 1989) (codified at 20 C.F.R. 639). The burden is thus on the "employer to show that a 'sudden, dramatic and unexpected' event occurred which precipitated a" mass layoff under WARN. *Id.* Where an unforeseen business circumstance has prevented an employer from providing timely notice under WARN, the employer must still "give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3).

Defendants contend contested issues of fact exist regarding whether the 9/11 bombings were an unforeseen business circumstance that prompted the September 28 firings, thereby precluding summary judgment for plaintiffs. The district court disagreed, holding defendants had failed to proffer admissible evidence raising a fact issue on this matter. *See Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1060 (8th Cir. 1996) (defendant employer has burden to show statutory affirmative defenses apply).

Defendants' unforeseen business circumstance argument hinges on two sentences appearing in an affidavit of FFI's Human Resource Director, Neil Morris. Those sentences state the following:

Based on a conversation I had with a Sybase executive and senior human resources employee on the evening of September 11, 2001, I understood that the day's events would likely have a devastating impact on a broad segment of FFI's customer base – *i.e.* its capital market clients – and that this would lead to significant additional layoffs at Orem. Therefore, my understanding at the time of the September 28, 2001 layoff was that the events of September 11 had, in substantial part, precipitated the layoff.

Aplt. App. at 191-92. Defendants rely on these two sentences as the evidentiary basis of their claim that the unforeseen impact of the 9/11 bombings was the cause of the September 28, 2001 terminations at the Orem site. In essence, they argue that this statement is evidence that the impact of the 9/11 bombings required Morris to fire the forty-one employees.

In arguing for the admissibility of Morris' statement, defendants concede that his reference to his conversation with the Sybase executives is hearsay. They nonetheless claim the statements are admissible under the exception for statements of remembered belief. FED. R. EVID. 803(3).[12] Rule 803(3) permits evidence of out-of-court statements regarding a declarant's then existing state of mind where the statement goes to the declarant's intent to perform a certain act.

_____

[12]Rule 803(3) permits hearsay where the statement relates to the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
FED. R. EVID. 803(3).

-27-

*See United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds."); *United States v. Donley*, 878 F.2d 735, 738 (3d Cir. 1989) ("Statements admitted under Fed.R.Evid. 803(3) to show the declarant's intent or plan may be used to show that the declarant acted in accord with that plan."); *United States v. Freeman*, 514 F.2d 1184, 1190 (10th Cir. 1975) (Rule 803(3) allows admission of an out-of-court statement to show a future intent of the declarant to perform an act).

In making their argument, defendants point to a general statement appearing earlier in Morris' affidavit that states

> I commenced my employment with FFI in November 1999 in the position of Senior Director of Human Resources. In this position, I am responsible for a variety of employment-related issues, including conducting and overseeing layoffs, and interpreting and applying employment policies and practices in compliance with state and federal employment laws.

Aplt. App. at 191. Defendants marry this language with Morris' hearsay statement regarding the "conversation [he] had with a Sybase executive and senior human resources employee" regarding the *likely* impact the 9/11 bombings would have on Sybase and its subsidiaries. From this, they argue Morris' statement evidences his "then existing state of mind . . . such as intent, plan, motive, design," FED. R. EVID. 803(3), which led him to decide to fire the forty-one employees on September 28.

The district court rejected defendants' argument and held the contested portions of Morris' statements should be excluded. The court then determined that because defendants had presented no other evidence that the September 28 layoffs were caused by the 9/11 bombings, they failed to create a triable issue of fact supporting the unforeseen business circumstances exception.

On appeal, defendants contest the district court's exclusion of portions of the Morris affidavit. In the midst of this evidentiary issue is a procedural quagmire. As referenced earlier in this opinion, a magistrate judge was assigned in this case to address non-dispositive matters. *See* 28 U.S.C. § 636(b)(1)(A); *see also Lithuanian Commerce Corp. LTD v. Sara Lee Hosier*, 179 F.R.D. 450, 456 (D. N.J. 1998) (magistrate's evidentiary rulings, even where they may ultimately affect the outcome of a claim or defense, are non-dispositive orders under 28 U.S.C. § 636(b)(1)(A)). Plaintiffs filed a motion to strike the two contested sentences from the Morris affidavit, claiming they lacked foundation and were based on inadmissible hearsay. The parties briefed the issue and presented oral arguments to the magistrate judge. At the hearing, the judge stated that Morris' "statements constitute hearsay, but I find that they are admissible pursuant to [Rule 803(3)'s] state of mind exception . . . ." Aplt. App. at 1008. The magistrate judge's order on the same issue simply stated "Plaintiffs' Motion to Strike Portions of the Declaration of Neil Morris . . . is denied . . . ." *Id.* at 783.

Plaintiffs failed to file a timely objection to the magistrate judge's decision

-29-

pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. That rule states

> [w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

FED. R. CIV. P. 72(a). *See also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). Nevertheless, during the summary judgment hearing before the district court, plaintiffs again raised their motion to strike. The court initially stated it agreed with the magistrate judge's decision but would permit plaintiffs to convince it otherwise. The court stated its understanding that "Mr. Morris was the decision maker and that since he had heard from someone that [the 9/11 bombings would have a] devastating effect [on the company] he went ahead" and decided to fire the forty-one employees on September 28. Aplt. App. at 1019. Plaintiffs pointed out that Morris never asserted in his affidavit that he made the decision to conduct the September 28 layoffs. In response, the court asked defendants to address the issue. *Id.*

Defendants argued that this question had already been fully briefed by the parties and decided by the magistrate judge. Pointing to nothing other than the Morris affidavit and some unverified documents accompanying it, defendants also

-30-

tried to persuade the court that Morris did more than merely conduct or oversee the September 28 firings. The court was not convinced, at one point exclaiming with exasperation "for heaven's sakes, he's not the decision maker, that's the problem." *Id.* at 1042. The court then excluded Morris statements as hearsay.

On appeal, defendants note plaintiffs failed to file a timely objection to the magistrate judge's ruling pursuant to Rule 72(a), thereby waiving their right to have the district court review the magistrate judge's order denying their motion to strike. Defendants contend the district court should not have entertained plaintiffs' belated arguments regarding the Morris affidavit. Defendants are only partially correct.

Rule 72(a), and its statutory companion, *see* 28 U.S.C. § 636(b)(1), place limits on a party's ability to seek review of a magistrate judge's non-dispositive order. However, a party's failure to seek timely review does not strip a district court of its power to revisit the issue. *See, e.g., United States v. Flaherty*, 668 F.2d 566, 585 (1st Cir. 1981); *Phillips v. Raymond Corp.*, 213 F.R.D. 521, 523, 525 (N.D. Ill. 2003); *Anderson v. Hale*, 159 F. Supp. 2d 1116, 1117 (N.D. Ill. 2001); *Johnson v. Cadillac Plastic Group, Inc.*, 930 F. Supp. 1437, 1439 (D. Colo. 1996); *see also generally* 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 3069, 353-56 (2d ed. 1997). Case law has similarly so held in the related matter of a district court's authority to review dispositive magistrate judge orders to which a party has failed

to object. *See, e.g., Kruger v. Apfel*, 214 F.3d 784, 786-87 (7th Cir. 2000); *Webb v. Califano*, 468 F. Supp. 825, 829 (E.D. Cal. 1979); *see also generally* WRIGHT & MILLER, *supra*, § 3070.1, 366. In the instant case, therefore, the district court was within its power to reexamine the hearsay question surrounding the Morris affidavit.

In reexamining this question, the district court was required to "defer to the magistrate judge's ruling unless it [was] clearly erroneous or contrary to law." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) (citing 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); *Grimes v. City & County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991)). Under the clearly erroneous standard, "the reviewing court [must] affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In turn, we review the district court's final evidentiary ruling for abuse of discretion. *United States v. Cestnik*, 36 F.3d 904, 906 (10th Cir. 1994). "Under this standard, a trial court's decision will not be reversed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) (internal quotation and citation omitted).

We do not think the district court's ultimate evidentiary decision represents an abuse of discretion. Defendants concede the two contested statements in the Morris affidavit are hearsay but assert the statements are admissible under the state of mind exception in FED. R. EVID. 803(3). *See Freeman*, 514 F.2d at 1190 (exception "allows the admission of an extrajudicial statement, not to prove the truth of the matter asserted, but to show a future intent of the declarant to perform an act if the occurrence of that act is in issue"). Defendants are incorrect.

As noted above, Rule 803(3) permits an out-of-court statement regarding a declarant's then-existing state of mind where the statement serves as evidence of the declarant's intent to perform an act. Defendants argue that Morris' understanding regarding the impact of the 9/11 bombings on Sybase and FFI led him to make the decision to fire the forty-one employees on September 28. Morris does assert he is responsible for "conducting and overseeing layoffs," aplt. app. at 191, but we agree with the district court that there is nothing to indicate he was the individual who issued the order to fire the forty-one employees. If Morris was not the decision maker regarding those firings, then his thoughts, beliefs or remembrances regarding the 9/11 bombings and their impact on Sybase and FFI are irrelevant. They are more accurately deemed to fall within the exception listed in Rule 803(3) that makes inadmissible statements "of memory or belief to prove the fact remembered or believed." FED. R. EVID. 803(3). His statements "spoke not to then-existing state of mind, but 'spoke to a past act, and

-33-

more than that, to an act by some one not the speaker.'" *United States v. Cintolo*, 818 F.2d 980, 1001 (1st Cir. 1987) (quoting *Shepard v. United States,* 290 U.S. 96, 106 (1933)).  At most, Morris' statements provide a factual recitation of events and his belief as to the cause of those events.

Even if we were to broadly infer from Morris' affidavit that he did make the decision to fire the employees on September 28, Rule 803(3)'s hearsay exception still would not aid defendants.  Certainly, "[a] declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds.  *If relevant*, such a statement may be introduced to prove that the declarant thereafter acted in accordance with the stated intent." *Best*, 219 F.3d at 198 (emphasis added) (internal citations omitted).  *See also Donley*, 878 F.2d at 738; *Freeman*, 514 F.2d at 1190.  Here, however, Morris' "understanding" of the "likely" impact of the 9/11 bombings does not help defendants, who were required to offer at least some evidence that the 9/11 bombings, the unforeseen event, did in fact "cause" the mass layoff.  *See* 29 U.S.C. § 2102(b)(2)(A).[13]

---

[13]In this regard, we disagree with defendant's reliance on *Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056 (8th Cir. 1996).  *Loehrer* addressed a mass layoff that occurred after the government cancelled a defense construction contract.  *Id.* at 1057.  The employer claimed it should be excused from the notice requirements under WARN because the contract cancellation represented an unforeseen business circumstance.  The court agreed.  *Id.* at 1062.  Even though, with hindsight, the court concluded the "death knell" for the specific contract at issue began to sound prior to its actual cancellation, the court nonetheless held the cancellation was unforeseeable at the time.  The court stated

[t]he Act and its regulations necessarily recognize that even the most

(continued...)

-34-

Morris' perception that the 9/11 bombings would likely have an impact on Sybase and FFI was based, at most, on an alleged conversation he had with two unnamed and unidentified Sybase employees. These hearsay statements cannot serve as the foundational basis for Morris' understandings regarding the 9/11 bombings. *See Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1265 (7th Cir. 1993). Nor does Morris' statement provide any other foundation to support his understanding that the 9/11 bombings actually precipitated the September 28 layoffs. The contested statements lack sufficient foundation because they fail to demonstrate they are "rationally based on the perception of the witness." FED. R. EVID. 701(a). The district court did not abuse its discretion in deeming inadmissible portions of the Morris affidavit.[14]

---

[13](...continued)
conscientious employers are not perfect, and they thus allow needed flexibility for predictions about ultimate consequences that, though objectively reasonable, proved wrong. So long as it may still fairly be said that the eventual plant closing or mass layoff is caused by a sudden, dramatic, and unexpected event outside the employer's control, the exception applies.

*Id.* at 1061. Hence, even though it was evident after the fact that the contract cancellation had been pending, the employer was still able to rely on the unforeseen business circumstances exception because it acted as "would reasonable employers within its own market" by not giving notice sooner. *Id.* The same cannot be said here. In *Loehrer*, the mass layoff was in fact caused by the unforeseen event of the contract cancellation. Thus, causation was not at issue in that case. In contrast, and as we discuss more fully in the text, here defendants have presented no admissible evidence as to causation. Therefore, *Loehrer* is inapposite.

[14]At base, defendants are confused as to Rule 803(3)'s applicability. The

(continued...)

Upon excluding portions of Morris' statement, the district court determined that defendants failed to present any evidence to create a triable issue as to whether the September 28 layoffs were in fact caused by the 9/11 bombings. The court also rejected defendants' suggestion that they needed "more time to determine whether September 11, 2001 indeed caused the layoffs." Aplt. App. at 965. The court ruled "Defendants have had ample time (over two years since September 11, 2001) to make that determination, and . . . have failed to provide any admissible evidence." *Id.*[15]

---

[14](...continued)
relevant declarant in this case is not Morris, but the unnamed Sybase executive or human resources employee mentioned in Morris' affidavit. Defendants are not asserting that we should consider the statements of those unnamed and unidentified executives to prove their existing state of mind, intent, plan or motive. *See* FED. R. EVID. 803(3). Rather, defendants contend Morris' statements regarding the conversations he had with the Sybase executives show Morris' intent and plan to fire the forty-one employees because of the 9/11 bombings. This is an impermissible application of Rule 803(3). The rule cannot be used to "authorize receipt of a statement by one person [here, the Sybase executives' statements,] as proof of another's [Morris'] state of mind." *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1265 (7th Cir. 1993). *See also United States v. Joe*, 8 F.3d 1488, 1493 n.4 (10th Cir. 1933) ("An out-of-court statement relating a third-party's state of mind falls outside the scope of the hearsay exception because such a statement necessarily is one of memory or belief."); H.R. REP. NO. 93-650 (1973) *reprinted in* 1974 U.S.C.C.A.N. 7075, 7087 ("the Committee intends that [Rule 803(3)] be construed . . . so as to render statements of intent by a declarant admissible only to prove his future conduct, not the future conduct of another person"). Again, Morris' statements are in regard to his memory and belief, and cannot be construed as proof of his intent, plan or motive. *See* FED. R. EVID. 803(3).

[15]We note, in this regard, that FFI submitted an affidavit from Sybase's chief financial officer, Pieter Van der Vorst, dated July 24, 2003, which describes
(continued...)

We agree with the court's decision not to provide defendants with additional discovery time. First, and as detailed in the regulations supporting WARN, "[t]he test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment." 20 C.F.R. § 639.9(b)(2). This is an objective test that requires the "employer to show that a 'sudden, dramatic and unexpected' event occurred which precipitated a" mass layoff under WARN. Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16,042, *16,062 (April 20, 1989) (codified at 20 C.F.R. 639). Of course, the 9/11 bombings were an unexpected and unforeseen event. However, as aptly noted by the district court, defendants failed to produce, even up to two years after the event, any evidence that the 9/11 bombings did in fact cause the layoffs. They have not even begun to meet their burden on this point. Moreover, if defendants wanted more time for discovery prior to the district court's consideration of the plaintiffs' motion for summary judgment, they should have filed a Rule 56(f) motion. Pursuant to Rule 56(f),

> [s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

---

[15](...continued)
the financial decline of FFI but makes no mention of how or to what extent the 9/11 bombings impacted the company. *See* Aplt. App. 187-89.

FED. R. CIV. P. 56(f).  Defendants did not act in accordance with Rule 56(f).

Plaintiffs filed their motion for summary judgment on May 2, 2003.  In defendants' response to this motion, they argued in a footnote that they should be afforded more time to engage in discovery to determine how exactly the 9/11 bombings impacted their financial status.  They contended that

> [a]t a minimum, the Court should allow Defendants additional time to conduct thorough and detailed financial analysis regarding the precise nature of 9/11's impact on its business and the causal relationship between the financial effects of 9/11 and the September 28, 2001 layoff at Orem.  The issue of when, if at all, Defendants may have owed WARN notice to Plaintiffs cannot be prematurely disposed of on summary judgment given the unforeseeable business circumstance of 9/11.

Aplt. App. at 183 n.11.  In their reply to defendants' opposition, plaintiffs noted that "if Defendants wanted 'additional time to conduct thorough and detailed financial analysis' to meet their burden of proof . . . they should have sought a stipulation or filed a Rule 56(f) affidavit and motion before filing their Opposition."  *Id.* at 727, n.4.  Regardless, defendants took no action.  Additionally, and pursuant to the scheduling order set in place by the district court, defendants technically still had until October 15, 2003, more than a month prior to the summary judgment hearing, *see* aplt. app. at 1012, to complete discovery and gather evidence to support their argument that the 9/11 bombings were the cause of the September 28 layoffs at the Orem site.  Defendants do not appear to have taken any steps along these lines.  Indeed, as asserted by plaintiffs

-38-

in filings before the district court, and raised again by this court at oral arguments, "[o]ne wonders why Defendants chose not to submit an affidavit from [the unnamed Sybase executive referenced in the Morris affidavit], or information about who directed or decided to conduct the layoff on 28 September 2003," and for what reason. Aplt. App. at 725, n.3.

Defendants' footnote request in its brief for additional discovery time does not pass muster under rule 56(f). In *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522-23 (10th Cir. 1992), we deemed insufficient for the purposes of Rule 56(f) unverified statements in attorney memoranda regarding the need for additional discovery. *See also Miller v. Auto. Club of N.M.*, 420 F.3d 1098, 1118 n.17 (10th Cir. 2005); *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 832-33 (10th Cir. 1986). Even if defendants were disadvantaged by the district court's exclusion of portions of the Morris affidavit, they undermined their own argument regarding the unforeseen business circumstances exception by failing to properly request additional discovery time. In light of the absence of causation evidence, the district court did not err in ruling against defendants on this issue.

C.  Were plaintiffs affected/aggrieved employees under WARN?

Even where a mass layoff has occurred pursuant to § 2102(d), an employer is not automatically liable under WARN. An employee who has suffered an employment loss in a mass layoff must still show he or she is "aggrieved" under

the statute.

As noted above, aggrieved employees are those who lose their jobs in a mass layoff without receiving the notice WARN requires an employer to provide them as affected employees. Affected employees are those "who *may reasonably be expected* to experience an employment loss *as a consequence of a proposed* . . . mass layoff by their employer . . . ." 29 U.S.C. at § 2101(a)(5) (emphasis added). The question remains whether any plaintiffs are aggrieved employees under the statute.

Defendants assert they do not have any obligations to plaintiffs under WARN because the mass layoff was not proposed or planned and plaintiffs are therefore not "affected employees." Defendants contend they did not know on September 7 or September 28, when they laid off two separate groups of employees, that a mass layoff might occur in the following month. They claim it was only in late October, with the final set of job terminations, that they knew they had fired enough employees to constitute a mass layoff, at which point they provided the last set of terminated employees sixty days' pay and benefits. Therefore, they say, it was impossible for them to provide the required sixty days' notice to the employees whose jobs were terminated in September. The mass layoff that ultimately arose because of plaintiffs' terminations was thus not planned or foreseeable and plaintiffs were not "affected employees" to whom notice was due under WARN.

In plaintiffs' motion for summary judgment on this issue, they argued in the broadest of terms that when defendants laid off enough employees in a ninety-day period to constitute a mass layoff pursuant to § 2102(d), the laid off employees were entitled to sixty-days back pay and benefits because defendants did not provide notice to them. Aplt. App. at 66. They thus asserted that an employer is liable to all employees dismissed in the layoff. Although the district court essentially agreed with plaintiffs reasoning, we are not persuaded.

Plaintiffs' argument ignores the statutory command that employer liability only extends to aggrieved employees, i.e., employees "who [have] worked for the employer ordering the . . . mass layoff and who, as a result of the failure of the employer to comply with section 2102 of [WARN] did not receive timely notice . . . as required by [the Act.]." 29 U.S.C. § 2104(a)(7). As we noted earlier in the opinion, aggrieved employees must also be affected employees, i.e., "employees *who may reasonably be expected to experience an employment loss as a consequence of a proposed . . . mass layoff* by their employer." *Id.* at § 2101(a)(5) (emphasis added). Plaintiffs have not established they are aggrieved employees and therefore are not entitled to summary judgment.

Defendants recognized below that plaintiffs "filed numerous affidavits in which they imply that Defendants had advance knowledge of Plaintiffs' layoffs and conducted these layoffs according to [a] predetermined scheme or schedule." Aplt. App. at 180. They then asserted "Plaintiffs' allegations directly conflict

-41-

with evidence adduced by Defendants regarding their plans with respect to layoffs at the Orem site . . . ." *Id.* In particular, defendants proffered an affidavit from Neil Morris that indicated in part that

> [o]n September 7, FFI laid off a total of 4 employees from the Orem site, all of whom are Plaintiffs in this lawsuit. During the 90-day preceding and including September 7, 2001, FFI laid off a total of 12 employees from its Orem site. As of September 7, 2001, FFI did not plan to conduct any significant additional layoffs during the remainder of the third quarter of 2001.

*Id.* at 191. Plaintiffs' contrary evidence provides support for the general proposition that they were "affected employees" in that they could "reasonably be expected to experience an employment loss as a consequence of a proposed . . . mass layoff by their employer." 29 U.S.C. § 2101(a)(5). But the cited portion of the Morris affidavit creates a disputed issue of material fact regarding whether plaintiffs were in fact "affected employees," precluding summary judgment in favor of plaintiffs. We therefore reverse this portion of the district court's summary judgment ruling, and we remand for further proceedings on the disputed issue of whether plaintiffs were affected employees under 29 U.S.C. § 2101(a)(5).

IV

For the foregoing reasons, we **AFFIRM** the district court's denial of summary judgment to defendants, **REVERSE** in part its grant of summary

-42-

judgment to plaintiffs, and **REMAND** for further proceedings in light of this opinion.

No. 04-4045, Julie Allen v. Sybase, Inc.

**KELLY**, Circuit Judge, dissenting.

The defendants bought their peace with the plaintiffs when each plaintiff signed a broad release in exchange for a severance benefit (that otherwise would not have been paid) consisting of four weeks of the plaintiff-employee's base salary, plus two additional weeks of base salary for every completed year of service. Under the court's analysis, the plaintiffs may be entitled not only to the severance pay granted in exchange for the release, but also sixty days back pay in accordance with the WARN Act.

The court holds that in the case of an aggregated mass layoff, an employee's WARN Act claims do not accrue until all elements of such a claim are satisfied, including the requirement of a mass layoff. At the same time, the court holds that the duty to notify occurs prior to the layoffs that will ultimately be aggregated to comprise the mass layoff. According to the court, the release in this case[1] only covers past and present claims as of the date of signing, and

---

[1] The release provides in pertinent part;

I agree that my Severance Benefit is in full satisfaction of any claims, liabilities, demands or causes of action, known or unknown, that I ever had, now have or may claim to have had against the Company or any [of] its parents, . . . as of the date of this Release, except claims for workers' compensation insurance and unemployment insurance benefits. Any claims whether for discrimination, including claims under state law, Title VII of the

(continued...)

excludes future claims, including claims which accrue after the release was signed. The court reasons that because the WARN Act claims did not accrue until after the release was signed, the plaintiffs are not barred by the release. In other words, once the WARN Act claims accrued, the WARN Act applies and only then would the plaintiffs have such claims to release. Some authority exists for the proposition that a release containing a temporal limitation does not encompass claims that have not accrued because certain elements must later come into existence unless such claims fall within a fair reading of the release terms. In re Vehm Eng'g Corp., 521 F.2d 186, 188-89 (9th Cir. 1975); see also Sherman v. Am. Water Heater Co., Inc., 50 S.W.3d 455, 459-461 (Tenn. Ct. App. 2001) (claim for mandatory indemnification did not arise until employee had a final, favorable judgment which came after release); Schenck v. Minolta Office Sys., Inc., 802 P.2d 1131, 1135 (Colo. Ct. App. 1990) (malicious prosecution claim did not accrue until after subsequent favorable termination of prosecution, which came after release).

[1](...continued)
Civil Rights Act of 1964 or the Age Discrimination in Employment Act, wrongful termination, breach of contract, breach of public policy, physical or mental harm or distress, or any other claims, are hereby forever released and I agree and promise that I will not file any legal action asserting any such claims.

Aplt. App. 280.

Here, the legal duty to notify and its breach occurred before the release was executed, and a fair reading of the release is that it encompasses such claims. It is a mistake to focus on the date of accrual in these circumstances, rather than the date on which the defendants breached their legal duty to the plaintiffs. This breach must have occurred, if at all, "as of the date of this release," and therefore the agreement released the defendants from all potential legal liability arising from it.

We begin with the proposition that "[o]nce a party establishes that his opponent signed a release that addresses the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense." Williams v. Phillips Petroleum Co., 23 F.3d 930, 935 (5th Cir. 1994). The parties in this case disagree about whether the release is broad enough to encompass the WARN Act claims; there is no dispute that the release is enforceable as to the claims it encompasses. See Wright v. Southwestern Bell Tel. Co., 925 F.2d 1288, 1292 (10th Cir. 1991) (listing seven factors to be considered in deciding whether a release is knowing and voluntary).

In interpreting a release, our job is to give effect to the intent of the parties when the release was signed. Joe v. First Bank Sys., Inc., 202 F.3d 1067, 1070 (8th Cir. 2000). A release need not specifically mention WARN Act claims to encompass them. See Int'l Ass'n of Machinist & Aerospace Workers, AFL-CIO

-3-

v. Compania Mexicana de Aviacion, S.A. De C.V., 199 F.3d 796, 799 (5th Cir. 2000); Williams, 23 F.3d at 936. Public policy favors enforcement of unambiguous release agreements. Joe, 202 F.3d at 1070.

According to the plaintiffs, the defendants "*could have* drafted Plaintiffs' releases to include any and all claims, known and unknown, past, present and *future*. They did not. Instead, they drafted it to include only claims that had arisen (known or unknown) 'as of the date of this Release.'" Aplees. Br. at 35 (emphasis in original). This analysis fails to consider the terms of the release as a whole. By its terms, this very broad release encompasses "any claims, liabilities, demands, or causes of action, known or unknown, that I have *ever had*, *now have*, or *may claim to have had*." There is a past, present and future orientation and the claims may be **known** or **unknown**–it is clear that the defendants exchanged generous severance benefits for a release of all claims relating to the layoffs. The phrase "as of the date of this release" is really no different than limiting the release to events occurring on or before its execution–a standard feature of most release agreements. See, e.g., Rogers v. General Elec. Co., 781 F.2d 452, 455 (5th Cir. 1986); Smith v. Verizon Commc'ns, Inc., No. CIV-04-190-M, 2005 WL 1907307, at *1-3 (W.D. Okla. Aug. 10, 2005).

Indeed, it is doubtful that a release could validly waive claims lacking a nexus to events which have occurred and still be consistent with public policy. There is no requirement that every element of a cause of action be satisfied as of

the date of the release. Rather past, present and future *claims*, *liabilities*, *demands*, or *causes of action* are contemplated. See Chaplin v. NationsCredit Corp., 307 F.3d 368, 372 (5th Cir. 2002) (construing release "from any and all claims, suits, demands, or other causes of action of any kind . . . arising at any time in the unlimited past" and noting that "[t]he terms of the releases unambiguously reveal an intent to cover every imaginable cause of action . . ."); Shutes v. Harrisburg Elementary Sch., No. 98-35330, 1999 WL 1020963, at *2 (9th Cir. Nov. 8, 1999) (in concluding that attorney's fees were barred by a similar release, court noted the absence of ambiguity when the release was considered as a whole and that the terms "demand" and "claims" have "no implication of being limited to the assertion of a cause of action"). Here, the claim, demand, or cause of action is based upon a failure to give notice as of the date of termination in accordance with the WARN Act. The only reasonable construction of the agreement in light of the facts is that the failure had occurred "as of the date of this release" and is encompassed therein. When coupled with its reference to the payment as a "Severance Benefit," it is plain that the agreement was intended to exchange severance benefits for a release of all liability related to the layoffs. The difficulty with the court's construction is that it confuses the potential legal implications of the facts (which would become apparent later) with the facts themselves. I respectfully dissent.