PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DONNA J. LONG; JEFFREY TAYLOR;
ARTHUR F. O'KELLY; LA WANDA A.
MULLINAX; ELAINE MATHESON;
STEPHEN E. KING; JANICE HOLLAND;
LARRY HARRIS; JOAN GOLDSMITH;
LINDA C. GILLIAM; ROBERT
GAMBRELL; SUSAN B. ELLIOTT;
ANTHONY DAVENPORT; MELISSA
WHITFIELD; VONDA G. SMITH;
TIMOTHY M. SMITH; BONNIE R.
RAMEY; PAMELA K. POORE; RHONDA
POORE; DOUG E. ADDIS; MARTY
SMITH; FRED S. WOOD,
                    *Plaintiffs-Appellants,*

                  v.                              No. 06-2143

DUNLOP SPORTS GROUP AMERICAS,
INCORPORATED, a/k/a Dunlop
Slazenger Group Americas,
Incorporated; WESTMINSTER
MANUFACTURING, LLC, a/k/a Dunlop
Slazenger Manufacturing, LLC,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
Henry M. Herlong, Jr., District Judge.
(8:06-cv-00294-HMH)

Argued: September 26, 2007

Decided: October 29, 2007

Before MOTZ and KING, Circuit Judges,
and Robert J. CONRAD, Jr., Chief United States District Judge for
the Western District of North Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge King and Judge Conrad joined.

---

## COUNSEL

Melvin Hutson, Greenville, South Carolina, for Appellants. Kristofer
Karl Strasser, OGLETREE, DEAKINS, NASH, SMOAK & STEW-
ART, P.C., Greenville, South Carolina, for Appellees.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

The Worker Adjustment and Retraining Notification Act ("WARN
Act" or "Act"), 29 U.S.C.A. §§ 2101-2109 (West 1999 & Supp.
2007), requires that certain employers provide their employees with
written notice 60 days before a plant shutdown causes the employees
an employment loss, including an employment termination other than
discharge for cause, voluntary departure, or retirement. In this case,
a covered employer ceased all production at its golf ball manufactur-
ing plant without prior notice of the shutdown. The employer, how-
ever, provided notice of the shutdown at the time of shutdown and for
the next 60 days continued to pay full wages and benefits to all but
twenty-two employees. The employer stopped payments to those
twenty-two employees when they began full-time employment with
another employer. Those employees bring this suit, asserting that the
employer violated the WARN Act and should pay their wages and
benefits for the entire 60-day notice period. We hold that the
employer did not violate the WARN Act because no employee suf-
fered an employment loss as a result of the plant shutdown until 60

days after the employer provided notice of it. Accordingly, we affirm the district court's grant of summary judgment to the employer.

I.

The parties agree as to the relevant facts.

For many years, Dunlop Sports Group Americas, Inc. and West-minster Manufacturing, LLC (collectively "Dunlop") operated a golf ball manufacturing plant in Westminster, South Carolina, employing approximately three hundred and fifty people. On October 31, 2005, Dunlop's employees arrived at work to discover that Dunlop had ceased operations at the facility.

Dunlop provided all employees with written memoranda informing them that Dunlop was selling the factory. The memoranda notified the employees that their employment would continue until the earlier of December 31, 2005, or the date that they accepted a position working for the successor company, which intended to operate the plant at a diminished capacity. The memoranda explained that henceforth employees would not be required to report for work at the plant, but assured them that they would continue to receive wages for forty hours per week and stay eligible for health and other benefits as long as they remained employed by Dunlop.

In late November, the successor company hired twenty-two Dunlop employees who had worked at the Dunlop plant until October 31. In early December, Dunlop ceased paying wages and benefits to these twenty-two employees (the "Employees"), finding them employed full-time by the successor company.

The Employees then filed this action, contending that Dunlop should have continued to pay them wages and benefits until December 31, 2005. Specifically, the Employees allege that Dunlop failed to comply with the notification requirements of the WARN Act and so should be required to pay their wages for a full 60 days after October 31, 2005, regardless of their employment during that period with the successor company. Both Dunlop and the Employees moved for summary judgment. The district court granted Dunlop's motion and denied that of the Employees.

II.

We review a district court's grant of summary judgment *de novo*. *See United States v. Kanasco, Ltd.*, 123 F.3d 209, 210 (4th Cir. 1997). This case turns solely on the interpretation of the WARN Act, and we consider the district court's interpretation of those statutory provisions *de novo*. *See United States v. Undetermined Amount of U.S. Currency*, 376 F.3d 260, 264 (4th Cir. 2004).

The WARN Act requires an employer to provide written notice to its employees 60 days before ordering a plant closing or a mass lay-off. 29 U.S.C.A. § 2102(a). When a company fails to provide sufficient notice, the Act allows individual employees suffering an employment loss to bring suit to recover unpaid wages and other benefits for each day of a violation. *See* 29 U.S.C.A. § 2104(a). The Act calculates an employer's liability for violations on the basis of the number of days of the violation, reduced by "any wages paid by the employer to the employee," but not reduced by wages the employee may earn from a new employer. *See* 29 U.S.C.A. § 2104(a)(2)(A). Thus, Dunlop would be liable to the Employees, as they allege, despite their new employment with the successor company, *if* Dunlop violated the WARN Act.

The WARN Act requires that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C.A. § 2102(a). The Act defines a "plant closing" as a "shutdown" that has certain undisputed characteristics and "results in an employment loss . . . for 50 or more employees." 29 U.S.C.A. § 2101(a)(2). As relevant here, the Act defines "employment loss" as "an employment termination, other than a discharge for cause, voluntary departure, or retirement." 29 U.S.C.A. § 2101(a)(6)(A).

Dunlop acknowledges that it is an "employer" as defined by the WARN Act, *see* 29 U.S.C.A. § 2101(a)(1), and that a "plant closing" involving the requisite number of employees occurred here, *see* 29 U.S.C.A. § 2101(a)(2). Dunlop contends, however, that it provided the required WARN Act notification to its employees 60 days prior to any employment loss resulting from the plant closing and thus incurred no liability to the Employees under the Act. The district

court so held. The Employees offer two arguments as to why the court erred in doing so. We consider each in turn.

III.

First, the Employees maintain that they suffered an employment loss at the time of the plant shutdown, October 31, 2005. Because the WARN Act required Dunlop to provide them with notice of the shutdown 60 days prior to October 31, they contend Dunlop's failure to do so violated the Act.

In support of this contention, the Employees initially suggest that the date of the plant shutdown must coincide with the date of the employment loss, and so their employment loss occurred on October 31, 2005. The Employees contend that because they received no notice prior to that date, they should receive wages and benefits for the full 60 days as a matter of course.

We addressed a similar contention in *United Mine Workers v. Martinka Coal Co.*, 202 F.3d 717 (4th Cir. 2000). There, the employer provided its employees with notice 60 days before it shut down its mining operation, but then discharged eighty-nine employees the day after providing the notice. *Id.* at 719. We expressly rejected the view that the date of shutdown must coincide with the date of employment loss. Moreover, relying on the purpose of the Act and the Department of Labor's implementing regulations, we concluded that "the Act's purpose is best served by construing 29 U.S.C. § 2102(a) to tie the 60-day notice requirement to the date when loss of employment caused by the shutdown first occurs." *Id.* at 721-22. Hence, in *Martinka*, we held that the employer violated the WARN Act because it had failed to provide notice 60 days prior to the employment loss suffered by the eighty-nine employees. *Id.* at 725. This reasoning applies equally in the case at hand. As we held in *Martinka*, the date of plant shutdown, here October 31, need not coincide with the date of the employment loss, and the WARN Act's required notice must precede the date when the *employment loss* resulting from the shutdown occurs, not the date when the shutdown itself occurs.

The Employees contend that even if this is so, they suffered an "employment termination," which constitutes an "employment loss,"

on October 31. They argue that because they no longer worked in the Dunlop factory as of that date, Dunlop terminated their employment, although the company continued to pay their salary and benefits until they accepted full-time employment with the successor employer. We cannot agree that this conduct constitutes an "employment termination."

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). The ordinary meaning of "employment termination" does not encompass a situation in which an employer continues to pay its employees full wages and benefits. Rather, "employment termination" is a "permanent cessation of the employment relationship." *Graphic Commc'ns Int'l Union, Local 31-N v. Quebecor Printing (USA) Corp.*, 252 F.3d 296, 299 (4th Cir. 2001) (quoting Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16,042, 16,047 (April 20, 1989)). When an employer commits to continue payment of wages and benefits to its employees, the employment relationship has not ended. Thus, our precedent has consistently held, as we do now, that "termination" does not necessarily occur when the employer ceases production. *See, e.g.*, *id.*; *Martinka*, 202 F.3d at 722.

The purpose and structure of the WARN Act permit no other view. The Act requires advance notice because such notice "provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." Worker Adjustment and Retraining Notification, 20 C.F.R. § 639.1(a) (2007); *see also Martinka*, 202 F.3d at 720 (citing regulations' description of purpose approvingly). Thus, in the WARN Act, Congress sought to protect employees' expectation of wages and benefits, *not* their expectation of performing work. The Act requires an employer to compensate employees for back pay and employee benefits when the employer fails to provide the required 60-day notice period. *See* 29 U.S.C.A. § 2104(a). But nothing in the Act suggests that Congress sought to protect an individual's ability to continue performing labor during the 60-day period, as the Employees contend.

Indeed, in the regulations promulgated pursuant to the WARN Act, the Department of Labor noted that "neither WARN nor the regulations dictate the nature of work to be performed — *or whether work must be performed* — during a period of employment after notice of an impending plant closing or mass layoff has been given." Worker Adjustment and Retraining Notification, 54 Fed. Reg. at 16,048 (emphasis added). These regulations also expressly provide that for purposes of the WARN Act, "termination" does not occur simply because an employee no longer performs the work that the employee formerly performed. *See* 20 C.F.R. § 639.3(f)(2) ("[A]n employment loss does not occur when an employee is reassigned or transferred to employer-sponsored programs, such as retraining or job search activities, as long as the reassignment does not constitute a constructive discharge or other involuntary termination.").

Dunlop's decision to continue paying all benefits and wages for 60 days without requiring work in exchange entirely accords with the language, purpose, and structure of the WARN Act, as well as the Department of Labor's authoritative interpretation of it. That decision did not constitute an "employment termination" under the Act.

IV.

Alternatively, the Employees argue that they did not voluntarily depart the company in early December, but rather Dunlop constructively discharged them and thus caused them an "employment loss" at that time. Although we agree that an "employment termination" occurred at this point, no "employment loss" occurred because the termination resulted from a voluntary departure. *See* 29 U.S.C.A. § 2101(a)(6).

A constructive discharge occurs "if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir. 1995) (internal quotation marks and citations omitted). The Employees apparently believe that Dunlop's actions rendered their working conditions "intolerable" and their departure "involuntary" because Dunlop told them that their employment would end in 60 days. But the WARN Act requires that covered employers, like Dunlop, provide notice 60 days prior to termination resulting from a plant

shutdown. If this notice of termination would make workplace conditions "intolerable," then every employer that adhered to the WARN Act notice requirement would constructively discharge its employees at the moment of notice and so violate the WARN Act. Obviously, Congress did not pass legislation in which an employer's very compliance with the statute constitutes a statutory violation.

And again, the regulations promulgated pursuant to the WARN Act fatally undermine the Employees' position. In these regulations, the Department of Labor states that it "does not . . . agree that a worker who, after the announcement of a plant closing or mass layoff, decides to leave early has necessarily been constructively discharged or quit 'involuntarily'." Worker Adjustment and Retraining Notification, 54 Fed. Reg. at 16,048.

We note that the Employees seem particularly disgruntled with Dunlop's decision to consider only those employees hired by the successor company to have departed voluntarily. Dunlop apparently came to this decision because it could easily ascertain the employment status of the employees hired by its successor.* The Employees have presented no evidence that an anticompetitive or discriminatory intent motivated this decision. Nor do they assert that this decision violated any statute that prohibits anticompetitive conduct or discrimination in employment decisions; clearly, the WARN Act itself does not regulate such matters. The WARN Act simply requires that covered employers provide notice 60 days before an employment loss; Dunlop complied with the Act.

In sum, the Employees voluntarily departed Dunlop's employment in early December 2005 for full-time employment with its successor; no constructive discharge occurred.

---

*Nothing in the record suggests that Dunlop discharged any employee engaged in part-time employment consistent with continued work for Dunlop and then mislabeled this termination a "voluntary departure."

## V.

For all of these reasons, the judgment of the district court is

*AFFIRMED*.