RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0002p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

TRACY MORTON, on behalf of herself and all others
similarly situated,

    *Plaintiff-Appellee*,

      *v.*

THE VANDERBILT UNIVERSITY,

    *Defendant-Appellant*.

No. 15-5417

———————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:13-cv-01012—Kevin H. Sharp, District Judge.

Argued: December 9, 2015

Decided and Filed: January 5, 2016

Before: BOGGS and McKEAGUE, Circuit Judges; BERTELSMAN, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Michael S. Moschel, BASS, BERRY & SIMS, PLC, Nashville, Tennessee, for Appellant. Scott P. Tift, BARRETT JOHNSTON MARTIN & GARRISON, LLC, Nashville, Tennessee, for Appellee. **ON BRIEF:** Michael S. Moschel, William N. Ozier, BASS, BERRY & SIMS, PLC, Nashville, Tennessee, John C. Callison, THE VANDERBILT UNIVERSITY, Nashville, Tennessee, for Appellant. Scott P. Tift, Jerry E. Martin, David W. Garrison, BARRETT JOHNSTON MARTIN & GARRISON, LLC, Nashville, Tennessee, for Appellee.

———————————

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

—————————————

**OPINION**

—————————————

McKEAGUE, Circuit Judge.    This is an unusual case that involves the defendant's handling of the termination of employees who are not before the court and who have not protested their treatment.  The plaintiffs are a group of 194 employees who were terminated by Vanderbilt University on July 1, 2013.  Their complaint, however, is only viable if Vanderbilt's treatment of 279 *other* employees was an immediate termination.

The plaintiffs have sued Vanderbilt University, claiming that their termination was in violation of the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101 *et seq.*, which requires certain employers to provide at least 60 days' written notice to affected employees before a mass layoff.  The plaintiffs' class, however, is insufficient in size to constitute a "mass layoff" as defined by the WARN Act.  The plaintiffs instead rely on the WARN Act's aggregation provision, which allows for separate layoffs within a 90-day period to be counted together in determining whether there has been a mass layoff.  The plaintiffs' claim turns on whether a separate group of Vanderbilt employees was laid off within 90 days of July 1, 2013.[1]

This second group of Vanderbilt employees was notified on September 17, 2013 that their jobs would be eliminated 60 days later, on November 16, 2013.  Although they were no longer permitted to report for work, they continued to receive wages and accrue benefits after the notice was given.  Additionally, they were not eligible for state unemployment benefits until November 16, 2013, when they no longer received wages and accrued benefits.  Thus, the employment relationship between Vanderbilt and the September employees did not end until November 16, 2013, the date that Vanderbilt told the employees that their employment would end and the date after which the employees no longer received wages and accrued benefits.

—————————————

[1]The parties agree that, if the September employees are found to have been terminated on September 17, 2013, the total number of employees terminated within 90 days of the plaintiffs' termination would reach the 500-employee threshold to constitute a "mass layoff" under the WARN Act.  *See* R. 87, Transcript at 4, Page ID 977 ("[W]e can stipulate that if the Court rules that the 279 people who got notice on September 17th were terminated on that date, the 500 employee threshold is met.").

Accordingly, because the second group of Vanderbilt employees suffered an employment loss more than 90 days after the plaintiffs were terminated and thus cannot be counted under the WARN aggregation provision, we reverse the decision of the district court.

# I

Under the WARN Act, an employer of 100 or more employees is generally required to provide at least 60 days' written notice to affected employees before a mass layoff may occur. 29 U.S.C. § 2102(a). A "mass layoff" is defined as "an employment loss at the single site of employment during any 30-day period for . . . at least 500 employees," 29 U.S.C. § 2101(a)(3), but the WARN Act also permits aggregation of two or more layoffs within a 90-day period unless "the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements" of the Act, 29 U.S.C. § 2102(d). The WARN Act defines employment loss as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period." 29 U.S.C. § 2101(a)(6). At issue in this case is when the employment of the September employees was terminated. The term "termination" is not defined in the WARN Act, but the Department of Labor has explained that it is "to have [its] common sense meaning" as "the permanent cessation of the employment relationship." 54 Fed. Reg. 16,042, 16,047 (Apr. 20, 1989); *see also Wiltz v. M/G Transport Servs., Inc.*, 128 F.3d 957, 963 (6th Cir. 1997) (noting as well that courts apply a "practical, effects-driven analysis of whether a break in employment actually occurred").

On September 17, 2013, Vanderbilt provided 279 employees with individualized letters notifying them that their positions would be eliminated in 60 days, on November 16, 2013.[2] The letters stated that the employees would "remain employed" but be placed on "paid leave" for those 60 days, and that they were no longer required to report to work. R. 76-1, Notice at 2, Page ID 769. These employees were told by their managers that they should gather their personal belongings and return all Vanderbilt property, including identification badges, laptop

---

[2]Vanderbilt also sent a letter on this date to the Tennessee Department of Labor and Workforce Development giving notice of reductions in force at the Vanderbilt University Medical Center.

computers, and cell phones. They were then taken to meet with someone to discuss career transition counseling, after which they were told to leave the campus. Any employee who did not have transportation to leave the campus was provided a pre-paid taxi voucher. The employees were told not to return to work and that it would be inappropriate to come to their work areas to socialize or visit. For the most part, their identification cards and email accounts were deactivated on that day. The September employees remained on Vanderbilt's payroll and received their full pay and benefits on their regular pay dates for 60 days after receiving the notice. Vanderbilt continued to pay the employees even if they worked elsewhere.

The district court found that the September employees had suffered an employment loss on September 17, 2013 and thereby fell within 90 days of the plaintiffs' layoff. As a result, the district court ruled that the plaintiffs had been subjected to a mass layoff and should have received 60 days' written notice as required by the WARN Act. The district court entered a final judgment in the plaintiffs' favor so that Vanderbilt could file this appeal. The sole issue is when the September employees suffered an employment loss—on September 17, 2013 or on November 16, 2013.

## II

In ruling that the employment relationship between the September employees and Vanderbilt immediately ended once they received their notice of termination, the district court ignored a crucial fact—the September employees continued to receive wages and accrue benefits until November 16, 2013.[3] So long as these employees were being paid and accruing benefits, there had not been a permanent cessation of the employment relationship. This comports with the purpose of the WARN Act, which is to provide workers "some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. 639.1(a). Providing the September employees with the 60-day notice gave them just that.

---

[3]It is also important to note that the September employees were explicitly told that their position "will be eliminated in sixty (60) calendar days on November 16, 2013" and that if "[y]ou have not obtained another position by the end of your sixty (60) day notification period, your employment will end." R. 76-1, Notice at 2, Page ID 769.

Additionally, these employees were not eligible for state unemployment benefits until November 16, 2013, when they no longer received wages and accrued benefits. *See* TENN. CODE ANN. § 50-7-211 (2008) ("An individual shall be deemed 'unemployed' in any week during which the individual performs no services *and* with respect to which no wages are payable to the individual . . . ." (emphasis added)). The record indicates that Vanderbilt did not believe that the September employees qualified for unemployment benefits during the notice period. Vanderbilt informed the employees that they would be eligible to apply for unemployment "after the separation period if [they] ha[d] not found another position." R. 76-1, Stipulated Facts Exhibit D at 14, Page ID 781. The plaintiffs have not provided any basis to believe that the September employees would have been eligible for unemployment benefits during the period of their paid leave.

The district court concluded that the September employees had suffered an immediate loss of employment upon receiving their notification letters on September 17, 2013. Recognizing the obvious logical fallacy in generally equating the date of notice with the date of termination—and so rendering it impossible for an employer to ever give 60 days' notice of termination—the district court's opinion relies on the following facts: the September employees were "instructed to clean out their workstations; [] required to return all Vanderbilt property (including their identification badges, which were promptly deactivated); [] instructed to leave the campus; and [] told not to return." *Morton v. Vanderbilt Univ.*, No. 3:13-01012, 2015 WL 1756911, at *3 (M.D. Tenn. Apr. 17, 2015). Thus, the implication of the district court's reasoning is that, in order for employment to continue after the WARN notice, employers would need to permit employees to perform work after the notice and before termination, even if the employer had a host of legitimate business reasons for desiring their absence from the premises after the notification.

Under the WARN Act, however, there is no obligation for employers to continue to require employees to perform work after the WARN notice, as long as the employees continue to receive wages and accrue benefits. As the Department of Labor has stated:

> [t]he question . . . has been raised as to whether an employment loss occurs if an employee retains full pay and benefits and other entitlements but is not required to report to work. DOL notes that neither WARN nor the regulations dictate the

nature of work to be performed—*or whether work must be performed*—during a period of employment after notice of an impending plant closing or mass layoff has been given.

54 Fed. Reg. 16,042, 16,048 (emphasis added); *see also Long v. Dunlop Sports Grp. Ams., Inc.*, 506 F.3d 299, 303 (4th Cir. 2007) (noting that "Congress sought to protect employees' expectation of wages and benefits, *not* their expectation of performing work" before concluding that "Dunlop's decision to continue paying all benefits and wages for 60 days without requiring work in exchange . . . does not constitute an 'employment termination' under the Act").[4]  Just as employers are not required to permit employees to *perform* work during the notice period to continue the employment relationship, there is no reason to believe that employers must permit employees to *show up to* work to do so.  It would hardly make sense for the WARN Act's aggregation provision to apply if an employer sent employees home for the notice period, but not apply if the employer had the employees sit in an empty room and do nothing.

## III

The district court used the definition of an "affected employee" to support its conclusion that the employment relationship between Vanderbilt and the September employees had immediately terminated on September 17, 2013.  In *Kildea v. Electro-Wire Products, Inc.*, we noted that the WARN Act regulations defined employees as individuals who were either "actively working" or "temporarily laidoff, or on leave, with a reasonable expectation of recall." 144 F.3d 400, 405 n.6 (6th Cir. 1998).  The district court used this definition to determine that the September employees were no longer employees after they were placed on paid leave because they did not have a reasonable expectation of recall.  Again, the result of such a conclusion is that employers would be required to permit employees to continue to work during the notice period in order for the employment relationship to continue after the WARN notice was given—a result that the Act does not require.  In *Kildea*, the issue was whether employees who had been temporarily laid off were "affected employees" and so entitled to notice under the WARN Act.  The ultimate question here, however, is whether there has been a permanent

---

[4]The district court distinguished *Long* from the present case on the grounds that *Long* did not involve the question of the aggregation of separate layoffs.  There is no principled reason, however, for differing definitions of employment loss when considering a single layoff as opposed to aggregating multiple layoffs.

cessation of the employment relationship at the time of notice—and we hold that there has not been a cessation of the employment relationship as long as the employees continued to be paid and accrue benefits.

**IV**

Plaintiffs also note that Vanderbilt provided the September employees with pay and benefits for 60 days, regardless of whether they got new jobs during that period.[5] And so, plaintiffs argue, Vanderbilt actually provided the September employees with pay in lieu of notice, a purported violation of the WARN Act. Pay in lieu of notice occurs when an employer immediately terminates a set of employees *without notice* and simultaneously provides 60 days' back pay of wages and benefits. *See, e.g., Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836, 840 (6th Cir. 2011); *Allen v. Sybase, Inc.*, 468 F.3d 642, 646 (10th Cir. 2006). Thus, when an employer provides pay in lieu of notice, the employment relationship immediately ends.

Here, however, the September employees were not given pay *in lieu of* notice—they were given pay *in addition to* notice.[6] Notice was given on September 17, 2013:

> Your position will be eliminated in sixty (60) calendar days on November 16, 2013. During the sixty day notification period you will remain employed but will be on a paid leave and will not be required to report for work. You may use this time to seek other employment, whether within or outside Vanderbilt. Any benefits that you currently receive will continue to accrue during this period. If you have not obtained another position by the end of your sixty (60) day notification period, your employment will end and you will receive payout of your accrued but unused balances for vacation and personal time in your final regular paycheck.

R. 76-1, Notice at 2, Page ID 769. And there is no dispute that pay was given throughout the entire 60-day period following notice. The WARN Act is not triggered when an employer does exactly what Vanderbilt did here—provide employees 60-day notice, continue to pay them their

---

[5]Plaintiffs make much of the fact that Vanderbilt continued to pay the September employees even if they found new jobs during the notice period, noting that the WARN Act would not require this. It is difficult to see why an employer should be penalized for being more generous than legally required. Regardless, such action on Vanderbilt's part does not weigh against the determination that these employees continued to have an employment relationship with Vanderbilt until they ceased to be paid and accrue benefits.

[6]Thus the plaintiffs' analogy to *Allen v. Sybase, Inc.*, is inapposite because that case involved aggregating layoffs in which employees had received pay in lieu of notice. 468 F.3d 642 (10th Cir. 2006).

wages and provide them their benefits, but not permit them to report for duty during the notice period. *See* 54 Fed. Reg. 16,042, 16,048 (noting that "neither WARN nor the regulations dictate the nature of work to be performed—*or whether work must be performed*—during a period of employment after notice of an impending plant closing or mass layoff has been given" (emphasis added)).

## V

Plaintiffs also argue that by placing the September employees on paid leave Vanderbilt impermissibly evaded the requirements of the WARN Act by manipulating the timing and numbers of employees laid off. And so, they argue, the plaintiff class should be aggregated with the September employees to trigger the WARN Act's protections. The WARN Act's aggregation provision was designed to capture employment losses that were alone not sufficient in number "but which in aggregate exceed the minimum number, *and which occur within any 90-day period*." 29 U.S.C. § 2102(d) (emphasis added). This statutory language is clear, and employers are permitted to rely on such language in spacing out layoffs. Congress has promulgated a 90-day aggregation period, and it is inappropriate for the courts to extend the period. There is nothing illegal about an employer spacing out layoffs so that some occur beyond a relevant 90-day period. While plaintiffs understandably feel that they received less favorable severance treatment than the September employees, Vanderbilt's actions did not violate the WARN Act.

* * *

The September employees did not suffer an immediate employment loss in September 2013. Rather, they remained employed on paid leave until they no longer received wages and accrued benefits in November 2013. It was then that their positions were finally terminated and they were eligible to apply for state unemployment benefits. As the September employees' termination falls outside of the 90-day aggregation window for the July employees, the plaintiffs were not subjected to a mass layoff as defined by the WARN Act. Accordingly, we REVERSE the decision of the district court.